**W. D. HADEN COMPANY, Appellant,**

v.

**C. E. RYMAN et al., Appellees.**

**No. 13993.**

Court of Civil Appeals of Texas.

Houston.

Nov. 1, 1962.

Rehearing Denied Nov. 29, 1962.

Vinson, Elkins, Weems & Searls, Houston, (Thomas B. Weatherly, Gaius G. Gannon, Jr., Houston, of counsel), for appellant.

J. Curtiss Brown, Robert Roch (Hill, Brown, Kronzer, Abraham, Watkins & Steely, Houston, of counsel), for appellees.

BELL, Chief Justice.

The appellee recovered judgment against appellant in the amount of $6,000.00. This represented compensation to appellee for injuries received by him when a truck belonging to one Evans and driven by a man named Thomas collided with appellee. At the time of the collision Thomas was hauling a load of building material belonging to appellant. The jury found that Thomas was an employee of appellant and not an independent contractor.

The sole question for our determination is whether there is any evidence of probative force supporting the jury's finding that Thomas was an employee of appellant and not an independent contractor.

In determining the question as to whether there is any evidence supporting a jury's answer to an issue we must view the evidence most favorably to the answer and disregard that militating against it. If from the evidence being so viewed the jury's answer may be reasonably inferred, there is legally sufficient evidence to support it. Maryland Casualty Co. v. Morua, Tex. Civ.App., 180 S.W.2d 194, writ ref. If, however, the evidence establishes no more than a surmise or suspicion as to the existence of the ultimate fact as found by the jury, there is no legally sufficient evidence to support the answer. Joske v. Irvine, Tex.Civ.App., 44 S.W. 1059.

In this case the material evidentiary facts are really not in dispute. The problem is whether it is reasonable to infer from them that appellant had such right of control over Thomas as to the details of the manner and means of executing

his work as to make him an employee. The legal test as to whether one is an employee or an independent contractor is whether the employer has the right of control in directing, not merely the end sought to be accomplished by the employment, but as well the means and details of its accomplishment; not only what shall be done, but how it shall be done. Smith Bros., Inc. v. O'Bryan, 127 Tex. 439, 94 S.W.2d 145; Riggs v. Haden Company, 127 Tex. 314, 94 S.W.2d 152. There are numerous cases cited us by both parties, all of which follow the stated rule. There is really no dispute as to the correct rule of law. The dispute concerns the results from an application of the rule to the evidentiary facts. The effect of all of the cases is that the total of the facts in a given case must be looked to in determining whether the employer has the right of control as to the details of the manner and means of performance. No one fact seems to be controlling in all cases but one fact may be common to the cases yet not controlling in all of them when all of the facts of a given case are considered.

■ Haden Company sells building material such as sand, gravel, shell and cement. They also sell ready-mixed concrete, but their regular employees deliver it to a job site in a Haden owned ready-mix truck. However, the other materials are, with rare exceptions, hauled from the plant to the job site by owners or operators of trucks such as was Thomas. The City of Houston is zoned and appellant pays the driver on a basis of so much per yard and the amount varies with the zone to which the haul is made. The operators of the trucks, who may work for Haden or other persons, will come to Haden's plant by 7 a. m. each morning if they wish work. This is the hour the plant begins to operate. The haulers are given work on a first come first called basis. They park their trucks while awaiting a call on a portion of the area within Haden's property. When a call comes in to Haden's office for material the order is taken by Haden's representative. A ticket will be made out by such representative which gives the name of the purchaser, the amount and type of material, the address to which delivery is to be made, and, if the sale is for cash, it will be shown as being C.O.D. Haden's representative will ring a bell and the hauler who is next out will go to the office and get the ticket. He will then go to the chute where the material is to be loaded into his truck. An employee of Haden will load the truck. When it is loaded the Haden representative will tell the hauler when to leave the chute. The material will then be delivered to the address shown on the ticket. The ticket will be signed by the purchaser or his representative and will be returned to the Haden office. It is from these tickets that the amount of compensation to the hauler is determined. If it is a C.O.D. haul, the driver will collect and deliver the money or check that has been given in payment to Haden's office

Haden representatives did not tell the haulers the route to travel. The company did have a map on the office wall where a hauler could locate the place he was to haul if he did not know where it was. Haden representatives might help a hauler locate the place. He did not, however, direct the route to follow. If a route that would ordinarily be followed was closed, Haden's representative would inform the haulers of such, but there is no evidence that the haulers would be directed as to any other route to be followed. The haulers were not directed as to when to come to work or when to quit. The haulers would usually be available from 7 a. m. to 5 p. m., the hours appellant's plant operated. However, if a hauler wanted to get to the plant at a different hour or leave at any time he could do so. However, if such were done with such frequency that the hauler was not dependable, he would not be allowed to haul. No direction as to speed to travel was given. If Haden had complaints about a driver such would be called to the driver's attention. If a truck were leaking Haden's representative would call

it to the driver's attention to help him. The drivers could work for other people when they wished. Of course, if doing this became so extensive that Haden could not depend on the hauler's availability, he would not be allowed to haul. The haulers could use the telephone at Haden's office to seek work elsewhere if not needed at Haden's.

Haden had over 200 other regular hourly employees. It required them to attend safety meetings. It deducted from their pay income and social security taxes. It would also allow them to enter into Government bond purchases. None of these things were true in the case of haulers such as Thomas.

What we have said shows the practice of Haden and the haulers and does not deal with any specific agreement as to right of control. Here where there is no specific agreement but rather the agreement for work is informal, we must seek the answer in what is actually done, it being evidence of the agreement.

We should notice particularly some other evidence with regard to Thomas' connection with Haden, particularly those upon which appellee relies to distinguish the situation in this case from the Smith Bros. Inc. v. O'Bryan and Riggs v. Haden cases, above cited. Thomas initially obtained his work as a hauler by contacting the Haden representative at the Greenbriar plant. He obtained permission to haul and was told what the compensation would be and the method of operation, as above stated. Thomas had previously worked for Horton and Horton. After Thomas went to work for Haden he continued to work for six or seven months up to the time of the accident involved in this case. He had worked for two months immediately preceding the accident every day except Sundays and some Saturdays. He got to work each morning before 7 a. m. Since the haulers obtained work on a first come first called basis it was important for him to do this. He was not required to do so. He was not told where to park his truck. There was no place marked off for the drivers to park. They just knew where to park. If they were told to move, they would do so so as not to interfere with Haden's customers or the ready-mix trucks. Thomas testified as above stated to the general method of operation and that his operations were in accord with that method. He stated they were never given instructions when they obtained the ticket. The information as above stated was on the ticket. When his truck was loaded Haden's man would tell him and he would know it was time to move on. He wouldn't leave until told to. The material delivered would be unloaded where purchaser's representative directed. Sometimes a customer would call in and state he wanted the material unloaded at a particular place on the job site and Haden's representative would tell the hauler this. In case a driver's truck broke down, if he was to be delayed, he would notify Haden's office. Thomas did this when he had the accident here involved. The hauler would have to repair his truck. He got no help from Haden. He could not use Haden's repair facilities. If the breakdown prevented delivery, Haden would send another hauler with a load. Haden did not send out to get the load, but it was up to the hauler to get it back to Haden's plant. Thomas redelivered the load to Haden's after the accident. If he needed to be pulled in he depended on one of the other haulers.

The effect of all of this evidence reasonably leads but to the conclusion that appellant had no right to control Thomas as to the manner and means of carrying out the details of the work, but rather what Haden did merely informed Thomas as to the work to be done and appellant was interested solely in the result in performance.

We are unable to distinguish the above fact situation in any material respect from the situations that were passed on by the Commission of Appeals in the case of Smith Bros., Inc. v. O'Bryan and Riggs v. Haden Company, supra. They are, therefore, con-

trolling, and the judgment of the trial court must be reversed and rendered.

We have studied all cases cited by appellee and find them factually distinguishable.

The judgment of the trial court is reversed and judgment is here rendered that appellee take nothing.