Casey Gene MORGAN, Plaintiff-Appellee,

v.

John FREEMAN, d/b/a The Freeman Company, Defendants-Appellants.

No. 81–2466.

United States Court of Appeals, Fifth Circuit.

Sept. 19, 1983.

Mike Hatchell, Tyler, Tex., for Freeman.

Don Stokes, Marshall, Tex., for Morgan.

Before BROWN and JOLLY, Circuit Judges, and MAHON *, District Judge.

MAHON, District Judge.

In this diversity case, John Freeman, d/b/a The Freeman Company, appeals an adverse judgment holding him vicariously liable for the injuries of Plaintiff, Casey Gene Morgan. Plaintiff was struck by a van driven by Kenneth Tavorn, who was completing a delivery he had made in Longview, Texas.[1]

Appellant argues basically two points— (1) that at the time of the accident John Freeman did not own the entity for which Tavorn made the delivery on the day in question, and (2) that Tavorn was an independent contractor of that entity, and his torts would not be imputed to the company. After reviewing the record and the applicable state law, we conclude that the district court decision is not clearly erroneous, and accordingly affirm.

## I.

Kenneth Tavorn, on April 23, 1979, while making a delivery for "Freeman Wholesale," lost control of his van and struck Casey Gene Morgan, the Appellee. The evidence indicates Tavorn was drunk and speeding at the time of the accident; Morgan was part of a work crew repairing one lane of the highway. Larry Freeman had paid Tavorn $60 to make the delivery. Tavorn used his own vehicle, delivered some products, received a payment from the customer, and was returning some products to Freeman Wholesale.

Appellee brought suit against Freeman Wholesale[2] and its alleged owner, John Freeman, Larry's father, on a theory of respondeat superior. John Freeman claimed he had sold the business to Larry and was not responsible for actions of its employees. Appellant also asserts that Tavorn was acting as an independent contractor and therefore his actions should not be imputed to Freeman Wholesale.

The District Court, the Honorable Robert M. Parker, United States District Judge, presiding, entered Findings of Fact and Conclusions of Law after trial without a jury. The Court found that Kenneth Tavorn was making a delivery for Freeman Wholesale and that John Freeman owned and operated Freeman Wholesale. The Court also concluded that Tavorn was an agent acting on behalf of Freeman Wholesale, that he was acting in the furtherance of that business at the time of the accident, and that John Freeman was vicariously liable for the actions of Tavorn at the time of the accident.

## II.

Appellant first argues he was not the owner of Freeman Wholesale at the time of the accident. He contends the business for which Tavorn delivered on April 23, 1979, was sold to his son, Larry, prior to the date of the accident. Appellee contends, and the district court found that no sale had taken place. The evidence supports this finding.

First, we must note that the testimony on behalf of John Freeman and Freeman Wholesale conflicts on several important points. The statements of John and Larry Freeman not only contradict each other, but are each internally inconsistent. The transactions involving John Freeman after the accident evidence an attempt to shield his assets from liability. On such a record, the reviewing court must recognize the deference ordinarily accorded the trial judge. *Inland Oil and Transport Co. v. Ark-White Towing Co.*, 696 F.2d 321, 325 (5th Cir.1983)

---

* District Judge of the Northern District of Texas, sitting by designation.

1. Pursuant to motion by Tavorn, he was dismissed as an appellant on December 24, 1981. There is no appeal as to the sufficiency of the evidence to support the finding that Tavorn was negligent.

2. The entity is referred to by at least four different names—Freeman Wholesale, The Weldit Company, The Freeman Company, and Larry's Wholesale (or Larry's Warehouse Distributors).

(credibility choice belongs to the trial court).

Several witnesses testified as to the ownership of Freeman Wholesale—not only the Freemans, but also others acquainted with the enterprise. No one seemed to know for certain who owned the business or who was running the business. Those who had no real interest in the outcome of the litigation—Bennie Schaefer, to whom the delivery was made, and Kathy Looney, a former employee—indicated that John Freeman owned the business entity.

Moreover, the demonstrative evidence strongly indicates that John Freeman had not divested himself of the business before the accident. There was no dated contract by which John Freeman sold the enterprise. The written contract for property that did exist was never actually executed. Transcript at 122. John Freeman was not even sure what had been sold to Larry—it may have been the business, it may have been only merchandise, or it may have been a part of a business. *See* Transcript at 107–13.

John Freeman, to show the ownership of the businesses, relied to some extent on the existence of the occupational licenses required by Louisiana law. Before the accident, however, John Freeman had applied for—and obtained—a city tax license for Freeman Wholesale. *After* the accident, Larry Freeman applied for a city tax license for Freeman Wholesale. This action indicates that at least for a part of 1979—before the accident—John Freeman was the owner of Freeman Wholesale.

The bank accounts for Freeman Wholesale all kept John Freeman as signatory—even after any purported sale to Larry. John signed at least two checks as salary for Larry, several months after Larry was supposed to be running his own business. John Freeman financially supported the enterprise for which Larry worked, Transcript at 159, and played a significant role in helping Larry run that business, or in running the business himself.

The question of who owned what business is clearly a question of fact. This Court will not readily substitute its judgment of the facts for that of the trial court. Rather, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with *the definite and firm conviction that a mistake has been committed.*" *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948) (emphasis added). Deference is accorded the trial judge especially where the credibility of witnesses is in question. *Id.; Inland Oil, supra,* at 325. Upon review of the entire evidence, this Court is not firmly convinced that a mistake has been made. In fact, the evidence strongly supports the district court's determination that John Freeman was the actual owner of Freeman Wholesale.

### III.

Appellant further contends that Tavorn was not an agent or employee of Freeman Wholesale. Instead, Appellant asserts, Tavorn was an independent contractor, whose torts would not be imputed to Freeman Wholesale or John Freeman.

First, we must consider the actual employment of Tavorn. The evidence, unrefuted by Appellant, indicates Larry Freeman, among other responsibilities, was responsible for deliveries of Freeman Wholesale. Although John Freeman had control over the entire enterprise, certain authority was left to Larry. In fact, Appellant has asserted throughout that *only* Larry Freeman had the authority to hire Tavorn. Thus, when Larry Freeman hired Tavorn, he was in fact hired to work for Freeman Wholesale.

The second step in this analysis concerns Tavorn's employment relationship to Freeman Wholesale (John Freeman). Appellant argues Tavorn was an independent contractor. Appellee contends the relationship was that of an employee.[3] Resolution of this

---

**3.** Although the trial court found Tavorn "was    acting as an agent" on behalf of Freeman

issue also depends upon the factual determination made by the trial court, and on Texas state law.

The trial court's findings of fact indicate that Tavorn was an employee of Freeman Wholesale. About one month before the accident, Tavorn began selling automotive products for Freeman Wholesale. He would pick up a stock of items in the morning, make sales to various service stations, and return unsold goods to the Freeman Company. At that time, Tavorn would also pay for any goods sold during the day. Tavorn sold on this basis about once a week, and made about $100 per day.

On April 23, 1979, instead of selling automotive products, Tavorn agreed to make a delivery for the Freemans. He loaded his van with the goods, made the delivery to Bennie Schaefer in a parking lot in East Texas, helped unload the goods and load them into Schaefer's van, received a partial payment from Schaefer, and began a return trip with some goods not accepted by Schaefer.

■■■ *Pilgrim v. Fortune Drilling Co.,* 653 F.2d 982 (5th Cir.1981), instructs that:

> In order for a master to be held liable under respondeat superior for the negligent acts of his servant, it must be shown (1) that an employer-employee relationship existed between the master and the tortfeasor and (2) that the negligent act was done in the scope and course of the tortfeasor's employment.

*Id.* at 986. The determinative test of the employer-employee relationship is often the right to control the putative employee. *William Sommerville & Son, Inc. v. Carter,* 571 S.W.2d 953, 956 (Tex.Civ.App.—Tyler 1978), *aff'd,* 584 S.W.2d 274 (Tex.1979).

The total facts in evidence determine whether an employer has the right to control. *W.D. Haden Co. v. Ryman,* 362 S.W.2d 133, 135 (Tex.Civ.App.—Houston 1962, writ ref'd), and the burden of proving lack of control is on the one claiming that exemption from liability. *Eagle Trucking Co. v. Texas Bitulithic Co.,* 590 S.W.2d 200, 212 (Tex.Civ.App.—Tyler 1979), *rev'd in part on other grounds,* 612 S.W.2d 503 (Tex. 1981).

■■ *Carter,* 571 S.W.2d at 956, sets forth the tests used to determine when one is an independent contractor:

> (1) the independent nature of his business; (2) his obligation to furnish necessary tools, supplies and materials to perform the job; (3) his right to control the progress of the work as to final results; (4) the time for which he is employed; (5) the method of payment, whether by the time or by the job.

*See Pitchfork Land and Cattle Co. v. King,* 162 Tex. 331, 346 S.W.2d 598, 603 (1961). On the present facts, the district court's decision is strongly supported by the evidence. Tavorn's progress on April 29, 1979, was strictly controlled by Larry Freeman. He was instructed as to the route to travel, the place of delivery and the time of delivery. He helped unload the goods at the destination and received partial payment from Schaefer on his account. He began a return trip to Louisiana with some goods not accepted by Schaefer. Previous dealings between Morgan and the Freeman Company indicate a similar relationship.[4] The nature of the relationship on April 29 is more closely akin to that of an employee than to that of an independent delivery service, due to the right of control over Tavorn's actions.[5] The trial court's finding

---

Wholesale, Conclusion of Law No. 5, the relevant legal analysis is the same. *See American Nat'l Ins. Co. v. Denke,* 128 Tex. 229, 95 S.W.2d 370, 373 (Tex.Comm'n App.1936, opinion adopted) ("master is liable for acts of his agent under the doctrine of respondeat superior only where the relationship of master and servant exists").

4. That Tavorn did not actually buy any goods for sale on his own, but would merely "settle

up" at the end of a working day, *see* Transcript at 185, is an important consideration.

5. The second prong of the test for respondeat superior liability—that the negligent act was done in the scope of employment, *see Pilgrim,* 653 F.2d at 986—was not contested by the appellant. The district court's finding on this point is not clearly erroneous. *See* Conclusion of Law No. 5.

that John Freeman failed to carry his burden of proving otherwise is not clearly erroneous, and must be affirmed.

## IV.

There is ample support in the record to support the district court's finding that John Freeman owned the business for which Kenneth Tavorn made the delivery on April 23, 1979. John Freeman could be held vicariously liable for Tavorn's actions, and the district court's finding that John Freeman is liable is not clearly erroneous.

Therefore the Judgment of the District Court is AFFIRMED.

E. GRADY JOLLY, Circuit Judge, dissenting:

I must respectfully dissent. I believe that the Texas case law cited by the majority, as well as other Texas cases, requires a finding that Tavorn was an independent contractor, not an employee of Freeman Wholesale.

Here Tavorn and Freeman Wholesale were engaged in two distinct and separate businesses. John Freeman, through Freeman Wholesale, manufactured and sold a radiator product, Weldit Stop Leak. Tavorn, on the other hand, was the proprietor of a janitorial service and supply company in Farmersville, Louisiana. To earn extra money, Tavorn had been assisting a friend, Kevin Dickey, as a wagon peddler of automobile service products for approximately one month prior to the accident. Dickey bought small quantities of automobile products from a wholesaler and in turn sold them "out of the trunk of his car" to service stations and other retail outlets. Dickey and Tavorn approached Freeman to purchase a quantity of Weldit Stop Leak in order to resell it. During the month prior to the accident, Tavorn bought and resold the Freeman merchandise on three or four occasions. Thus Tavorn and Freeman/Freeman Wholesale were engaged in two separate and distinct enterprises.

On the day of the accident, Tavorn approached Larry Freeman to purchase merchandise for resale to service stations. Lar-ry needed someone to deliver an order to a customer in Longview, Texas, and upon learning that Tavorn intended to sell in Texas that day, asked Tavorn if he would be interested in making the delivery. Tavorn agreed to do so and was paid $60 to make the trip. He was told where, when and to whom to deliver the products. Tavorn used his own van for the delivery since a regular passenger car was too small to carry the merchandise.

This was thus a one-time job for which Tavorn was paid a flat fee. The job required that he provide his own van, the only tool required for the job. Tavorn was free to accept or reject the delivery job. As soon as the delivery was made, the job was completed, and there was no continuing obligation on the part of either party.

Moreover, Tavorn was not on any payroll, no withholding or social security taxes were deducted from his fee, nor was he provided with workers' compensation coverage. *See Anchor Casualty Co. v. Hartsfield,* 390 S.W.2d 469, 471 (Tex.1965).

An independent contractor has been defined as any person who, in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect to all its details. *William Sommerville & Son, Inc. v. Carter,* 571 S.W.2d 953, 956 (Tex.Civ.App.1978), *aff'd,* 584 S.W.2d 274, 277 (Tex.1979); *Pitchfork Land and Cattle Co. v. King,* 162 Tex. 331, 346 S.W.2d 598, 603 (1961).

As noted by the majority, *Pitchfork Land and Cattle Co.* set forth the tests for determining when one is acting in the capacity of an independent contractor. The court went further, however, and stated that:

It has been authoritatively said that in practically all cases the independent nature of an agreement of employment may be inferred from two circumstances (1) that the party is engaged in a distinct and generally recognized employment; (2) that his stipulated remuneration is to be determined by some quantitative stan-

dard. Dave Lehr, Inc. v. Brown, supra. Those two factors predominate in this case.

*Pitchfork Land and Cattle Co.*, 346 S.W.2d at 604.

The case therein cited, *Dave Lehr, Inc. v. Brown*, 127 Tex. 236, 91 S.W.2d 693 (1936), had facts nearly identical to those in the instant case. In *Dave Lehr, Inc.*, the plaintiff was injured by a truck driven by one Valderrano, and the question was whether Valderrano at the time of the accident was an employee of Dave Lehr, Inc., so that the latter was legally liable for the injury under *respondeat superior.*

The facts which the court in *Dave Lehr, Inc.*, found to be important were that Valderrano owned his own truck and was engaged in the distinct occupation of a "truck driver" whose business was hauling materials for others for hire. He furnished his own truck and paid the expense of upkeep and the cost of operation for it. Valderrano was paid by the load of material hauled per mile. There was no agreement that Valderrano was to continue hauling for any specific length of time or that the defendant was obligated to furnish him any definite quantity of materials for hauling. Valderrano could haul for others if he desired. *Dave Lehr, Inc.*, 91 S.W.2d at 693.

Dave Lehr, Inc., was engaged in a separate business—that of buying and selling rock, gravel, sand, cement and other materials. *Id.*

Even though Valderrano "was instructed to use the most practical and direct route, to observe traffic laws, to drive slowly in passing schools and churches, and was paid on a mileage basis," the court found that he was an independent contractor. *Pitchfork Land and Cattle Co.*, 346 S.W.2d at 603, *citing Dave Lehr, Inc.*, 91 S.W.2d at 695.

The undisputed facts of this case are that Tavorn and Freeman Wholesale were engaged in two separate and distinct businesses; that Tavorn was paid by a quantitative standard, i.e., per trip; that he furnished his own truck, paid the cost of upkeep and operation of it; that there was no agreement beyond the single trip; and that Ta-

vorn could haul for others when and if he desired. In other words, Tavorn possessed *every* indicia of an independent contractor under *controlling* Texas cases.

As for the control over Tavorn which the majority finds present here, i.e., that Tavorn "was instructed as to the route to travel, the place and time of delivery," this is insufficient under *Pitchfork Land and Cattle Co.* and *Dave Lehr, Inc.*, as a matter of law, to constitute the necessary control or right to control required for a finding of master/servant or employer/employee.

Under Texas law, where one has the right to control the end sought to be accomplished but not the means and details of the accomplishment, the person who is employed acts as an independent contractor. Moreover, an employer who exercises only such control over an independent contractor as is necessary to ensure performance of the contract, in order to accomplish the results contemplated by the parties, does not thereby make the contractor an employee of the company. *First National Bank of Ft. Worth v. Bullock*, 584 S.W.2d 548, 551–52 (Tex.Civ.App.1979). Even an occasional assertion of control by the employer does not destroy the settled relationship between the parties. *Id.* at 552, *citing Newspapers, Inc. v. Love*, 380 S.W.2d 582 (Tex.1964).

It is thus apparent that under long-settled Texas precedent, Tavorn, as a matter of law, was an independent contractor and not an employee. Because I cannot understand how the majority can refuse to follow clear and controlling precedent, I respectfully dissent.