ACCEPTED
08-14-00134-CV
EIGHTH COURT OF APPEALS
EL PASO, TEXAS
12/18/2015 11:55:11 AM
DENISE PACHECO
CLERK

No. 11-12-00322-CV

IN THE COURT OF APPEALS
FOR THE
EIGHTH COURT OF APPEALS DISTRICT OF TEXAS
EL PASO, TEXAS

FILED IN
8th COURT OF APPEALS
EL PASO, TEXAS
12/18/2015 11:55:11 AM
DENISE PACHECO
Clerk

STEVEN PAINTER; TONYA WRIGHT, Individually and as Representative of the ESTATE OF EARL A. WRIGHT, III, DECEASED; VIRGINIA WEAVER, Individually and As Next Friend of ALBERT A. CARILLO, A MINOR; TABITHA R. ROSELLO, Individually and as Representative of the ESTATE OF ALBERT CARILLO, DECEASED

*Appellants*,

v.

AMERIMEX DRILLING I, LTD.

*Appellee*.

ON APPEAL FROM THE 83D JUDICIAL DISTRICT COURT, PECOS COUNTY, TEXAS

### APPELLANTS' MOTION FOR REHEARING

**David W. Lauritzen**
State Bar No. 00796934
*DLauritzen@CBTD.com*
COTTON, BLEDSOE, TIGHE & DAWSON, PC
P.O. Box 2776
Midland, Texas 797002-2776
P: 432.685.5782 | F: 432.682.3672

**Rahul Malhotra**
State Bar No. 00797781
*Rahul@TheMalhotraLawFirm.com*
THE MALHOTRA LAW FIRM
319 North Grant Avenue
Odessa, Texas 79761
P: 432.580.4878 | F: 432.337.7283

**Jon Hanna**
State Bar No. 08919200
*JHanna7534@aol.com*
HANNA LAW FIRM, PC
302 Chestnut Street
Abilene, Texas 79704
P: 325.673.6952 | F: 325.673.4496

**ATTORNEYS FOR APPELLANTS**

DECEMBER 18, 2015

## IDENTITY OF PARTIES AND COUNSEL

To the best of Appellants' knowledge, the following is a complete list of parties and counsel to the judgment being appealed, as required by *Texas Rule of Appellate Procedure* 38.1(a).

| | |
|---|---|
| **Presiding Judge:** | The Honorable Pete Gomez, Jr.<br>83d Judicial District Court<br>Pecos County, Texas |
| **Appellants:** | STEVEN PAINTER;<br><br>TONYA WRIGHT, Individually and as Representative of the ESTATE OF EARL A. WRIGHT, III, DECEASED;<br><br>VIRGINIA WEAVER, Individually and As Next Friend of ALBERT A. CARILLO, A MINOR;<br><br>TABITHA R. ROSELLO, Individually and as Representative of the ESTATE OF ALBERT CARILLO, DECEASED |
| Trial & Appellate Counsel:<br><br>STEVEN PAINTER;<br><br>TONYA WRIGHT, Individually and as Representative of the ESTATE OF EARL A. WRIGHT, III, DECEASED | Jon Hanna<br>State Bar No. 08919200<br>*JHanna7534@aol.com*<br>HANNA LAW FIRM, PC<br>302 Chestnut Street<br>Abilene, Texas 79704<br>P: 325.673.6952 \| F: 325.673.4496 |

| | |
|---|---|
| Trial & Appellate Counsel:<br><br>VIRGINIA WEAVER, Individually and As Next Friend of ALBERT A. CARILLO, A MINOR;<br><br>TABITHA R. ROSELLO, Individually and as Representative of the ESTATE OF ALBERT CARILLO, DECEASED | Rahul Malhotra<br>State Bar No. 00797781<br>*Rahul@TheMalhotraLawFirm.com*<br>THE MALHOTRA LAW FIRM<br>319 North Grant Avenue<br>Odessa, Texas 79761<br>P: 432.580.4878 \| F: 432.337.7283 |
| Appellate Counsel for All Appellants: | David W. Lauritzen<br>State Bar No. 00796934<br>*DLauritzen@CBTD.com*<br>COTTON, BLEDSOE, TIGHE & DAWSON, PC<br>P.O. Box 2776<br>Midland, Texas 797002-2776<br>P: 432.685.5782 \| F: 432.682.3672 |
| **Appellees:** | AMERIMEX DRILLING I, LTD. |
| Trial & Appellate Counsel: | Karen C. Burgess<br>RICHARDSON + BURGESS, LLP<br>221 West 6th Street, Suite 900<br>Austin, Texas 78701-3445 |

**TO THE HONORABLE COURT OF APPEALS:**

APPELLANTS, STEVEN PAINTER; TONYA WRIGHT, Individually and as Representative of the ESTATE OF EARL A. WRIGHT, III, DECEASED; VIRGINIA WEAVER, Individually and As Next Friend of ALBERT A. CARILLO, A MINOR; and TABITHA R. ROSELLO, Individually and as Representative of the ESTATE OF ALBERT CARILLO, DECEASED file this Motion for Rearing.

## I.    GROUNDS FOR REHEARING

Appellants respectfully request a rehearing because the Court's Opinion focuses on the employer's control, but the focus is properly on whether the driver was furthering the interests of his employer at the time of the incident. The Opinion moots employer vicarious liability by imposing an impractical control standard, never before applied to direct employers. Amerimex Drilling I, Ltd.'s ("**Amerimex**") employee, Mr. Burchett, was acting in the course and scope of his employment and furthering Amerimex's business interests at the time of the dreadful, deadly incident.

## II.    ARGUMENT

### A. *Driving the crew was part of Amerimex's contractual obligation.*

The **Amerimex-SandRidge Contract** (also, the "**Contract**") identifies, particularizes, and covers the business services Amerimex was to perform as part of Amerimex's regularly conducted business operations for SandRidge. *See* R. at 94–106 (Amerimex Mot. Sum. J., Ex. C (Jun. 25, 2012)). The Contract was signed by Glen Murphree, Amerimex's Chief Financial Officer ("**CFO**"). *Id*. at 100. The Contract was intended to further the business interests of the contracting parties.

The Amerimex-SandRidge Contract clearly identifies driving the crew to and from the wellsite as part of Amerimex's duties under the contract. *Id*. at 99, § 27.9(B). The Contract commands Amerimex to have its Driller ferry the crew working on the SandRidge well. *Id*. The contract explicitly states: Amerimex "shall

invoice … [SandRidge] for and pay each Driller to receive $50/day to drive crew out to well location." *Id.* That is clear, unambiguous language within the four-corners of the document.

None of the cases cited or relied upon by this Court in its Opinion have that particular and highly relevant fact. Burchett and his crew did not simply decide to carpool out of a self-interest or on their own volition. No, quite the contrary, Amerimex definitively agreed and contractually promised SandRidge that Amerimex would have the Amerimex Driller ferry the Amerimex crew.

## B. *This Court incorrectly concluded Appellants' arguments.*

### 1. Remote drilling site has nothing to do with the coming and going rule.

This Court incorrectly "discern[ed]" that Appellants contend "the nature of remote drilling sites presents an exception to the general rule … [that] coming from or going to work is not within the course and scope of employment." Op., p. 6. The reason Mr. Burchett was within the course and scope of employment was because he was executing a contractual provision on behalf of and for his employer. *See* R. at 99, § 27.9(B). The Amerimex-SandRidge contract required Amerimex to pay an Amerimex Driller to transport the Amerimex crew to and from the SandRidge wellsite. *Id.* At the time of the incident, Burchett was doing that —taking the Amerimex crew back to the bunkhouse.

The whereabouts of the bunkhouse is irrelevant. Whether the crewmembers could take their own vehicles or not is irrelevant. Whether the crewmembers could stop for a meal *en route* is irrelevant. The clear, unambiguous language of the contract controlled Amerimex's actions. *See* R. at 99, § 27.9(B). The contract specifically required Amerimex's Driller to transport the Amerimex Crew to and from the drilling site. *Id.* Therefore, when Mr. Burchett was driving the Amerimex Crew at the time of the incident, he was performing Amerimex's contractual obligation; he was furthering Amerimex's business interests.

## 2. The reason for the "car-pooling arrangement" is unconnected to vicarious liability.

This Court (wrongly) concluded that it is Appellants' contention that "the car-pooling arrangement was in furtherance of Amerimex's business *as it ensured that a complete crew came* [sic] *to the drilling rig each day*." Op., p. 6 (emphasis added). Not so. The reason the so-called "car-pooling arrangement" was in furtherance of Amerimex's business interests was because it was the execution of Amerimex's contractual obligation under the Amerimex-SandRidge contract. *See* R. at 99, § 27.9(B).

### C. *The "most frequently offered reason" means it is not the only reason to impose vicarious liability.*

Relying on *Baptist Memorial Hospital System v. Sampson*, 969 S.W. 2d 945, 947 (Tex. 1998), this Court correctly noted an employer is vicariously liable for the negligence of an employee when the employee *acts within the course and scope of their employment*. *See* Op., p. 8. This Court also admitted that "[t]here are a number of possible justifications for this rule." *Id*. But, it then stated that the "most frequently offered reason for imposing vicarious liability" arises out of control of the employee by the employer. *Id*. This Court relied on Comment D to RESTATEMENT (SECOND) OF AGENCY § 220 to support that contention. *Id*. However, Comment D states:

> .... [T]he control or right to control needed to establish the relation of master and servant **may be very attenuated**. In some types of cases which involve persons customarily considered as servants, **there may even be an understanding that the employer shall not exercise control**. Thus, the full-time cook is regarded as a servant although it is understood that the employer will exercise no control over the cooking.

RESTATEMENT (SECOND) OF AGENCY § 220, cmt. D (1958) (emphasis added). So, when this Court then applied overt control as the only possible reason to impose vicarious liability, the Court overstepped both reason and evidence. *See* Op., p. 8.

"To impose vicarious liability on the principal, the proper inquiry for agency is whether the agent was acting within the scope of the agency relationship at the time of the wrongful act" *Bell v. VPSI, Inc.*, 205 S.W.3d 706, 714 (Tex. App.—Fort Worth 2006, no pet.) (citing *Celtic Life Ins. Co. v. Coats*, 885 S.W.2d 96, 100 (Tex. 1994)). The requirements to prove course and scope of employment are enumerated by the RESTATEMENT OF AGENCY which provides that torts are within the scope of an agent's employment *if* the *conduct* is:

1) The kind [the employee] is *employed to perform*;
2) Occurs substantially within the *authorized time* and *space limits*; and
3) Is actuated, at least in part, by a purpose to *serve the employer*.

*Kolstad v. American Dental Ass'n*, 527 U.S. 526, 543 (1999) (*quoting* RESTATEMENT (SECOND) OF AGENCY § 228(1) at 504). Applying those requirements to the present case:

1) Mr. Burchett, as Driller, was employed as driver for his crew and paid a separate amount from his regular Driller's pay just to drive the Amerimex Crew to and from the well site;
2) The incident occurred substantially within a short period of the Amerimex's Crew regular tour shift and *en route* from the well site; and
3) Mr. Burchett driving the Amerimex Crew was actuated in its entirety to serve and execute Amerimex's agreement with SandRidge.

Clearly, Mr. Burchett was furthering Amerimex's business interests.

### D. Burchett is does not understand the legal term "control."

The Court relied on testimony by Mr. Burchett, Amerimex's Driller and driver for his testimony that his, Painter, Wright, and Carillo's (the "**Amerimex Crew**") "shift ended at 6 a.m. [sic]," he "was not working at the time" of the incident, and that "Amerimex has no control over … [their] time off." Op., p. 20. Burchett is not qualified to make those statements such that they should be interpreted in a legal manner.

Mr. Burchett was the Driller for the Amerimex Crew. *See* R. at 140–41, J.C. Burchett Dep. v. 1, 6:24–7:1; 8:1–5; 11:23–25; 12:7–22 (Oct. 7, 2008) (Amerimex Mot. Sum. J., Ex. F (Jun. 25, 2012)); *see also* R. at 239, J.C. Burchett Dep. v. 2, 6:2–4, 7:2–5 (Apr. 1, 2009) (Pl.'s Resp. to Amerimex Mot. Sum. J., Ex. A-2 (July 19, 2012)). He never graduated high school. He has only the simplest understanding of how he is paid, what that pay represents, and the legal implications that go with those things.

Giving Mr. Burchett credit for making a legal representation that his "shift ended at 6 A.M.," he "was not working at the time" of the incident, and that "Amerimex has no control over … [their] time off," is pure conjecture and conclusory. It is more likely, given Mr. Burchett's very limited education, that in his mind "working" meant actually working on the rig as a driller. It is more likely that in Mr. Burchett's mind "control" by Amerimex means Amerimex telling him what job to do.

The Opinion and Record are clear on the fact that Mr. Burchett was getting paid a separate stipend to ferry the Amerimex Crew to and from the drilling site. This Court recognized that Amerimex paid Mr. Burchett a separate payment specifically for driving the Amerimex Crew to the jobsite before their schedule tour start time and from the jobsite after their scheduled tour ended. Op., pp. 3, 21.

Yes, the Amerimex Crew's tour shift was over and Mr. Burchett had, analogously, removed his Driller's hat, just as the rest of his crew had removed their hats when they clocked off the jobsite. But, at the time of the incident, Mr. Burchett was wearing his Chauffer's hat. Mr. Burchett was on the clock, performing a different and distinct job for Amerimex. Mr. Burchett was getting paid to shuttle the Amerimex Crew. It is un-American to think that a for-profit entity would pay an employee for doing something that did not further the business's interests.

Mr. Burchett might be an exceptional Driller. For all Appellants know, he might be the most adept Driller in history. But, he has no legal training. He never finished the 12th grade. It is inconceivable that he used the word "control" in any legal sense. It is inequitable for this Court assigned the legal definition to Mr. Burchett's use of the word "control."

### E. Glen Murphree is not qualified to make a statement whether Amerimex had legal control over the Amerimex Crew.

Mr. Murphree is Amerimex's CFO. R. at 108, Contested Case Hr'g, G. Murphree Testimony, 3:6–9 (Feb. 29, 2009) (Amerimex Mot. Sum. J., Ex. D (Jun. 25, 2012)) ("**Murphree Testimony**"). He is not an attorney and the record does not indicate he has had any legal training. Before he became CFO for Amerimex's general partner in 1997, he worked twenty-two years for a bank in Sweetwater, Texas. R. at 284–85, G. Murphree Dep., 41:17–25, 42:3–7 (Oct. 7, 2008) (Amerimex Mot. Sum. J., Ex. D (Jun. 25, 2012)) ("**Murphree Dep.**"). He spent eighteen of his twenty-two years working in the bank's trust department. *Id.*

In its Opinion, this Court accepted Mr. Murphree's contention that Amerimex had "no control" over its employees once "they leave the rig." Op., pp. 20–21. In doing that, this Court ordained Mr. Murphree as having the knowledge, skill, and training to understand the legal definition of "control." However, reading all of Mr. Murphree's deposition, even reading the snippets quoted in the Opinion, it is clear he used the term "control" in its common, ordinary usage and not in the legal-sense.

Mr. Murphree said things like "I have no control over those people when they leave the rig" or "They start work when the get to the rig, and that's when work begins … Outside that, you know, we have no control over them," he is using "control" in a generalized and common-usage manner. *See* Op., pp. 20–21. Well, obviously, Amerimex controls its employees under a common usage definition. The employees have to "get to the rig" sober with no alcohol or drugs in their "bodily

systems"—that's controlling their actions outside of the workplace. The employees have to submit to "searches or inspections" of their persons, property, or vehicles for alcohol or drugs—that's controlling their actions outside of the workplace and in their personal vehicle. The employees must wear proper clothing and personal protective equipment—that's controlling their actions outside of the workplace and not letting them dress as they please.

By Amerimex's own attorney's statement, Mr. Murphree had no understanding of the legal definition of control, except what he was told after-the-fact by the Amerimex attorney. R. at 290, Murphree Dep. at 62:3–24. Therefore, any legal-definition amounts to testimony by Amerimex's attorney.

Mr. Murphree used the word "control" in a common, everyday manner. In consecrating his trust-officer, layman's usage of the word "control" with the full ramification of the legal definition of "control," this Court rendered an inequity upon Appellants.

### F. *Court misapplied* **Pilgrim v. Fortune Drilling Co.**

This Court relied on *Pilgrim v. Fortune Drilling Co., Inc.*, 653 F.2d 982, 986–87 (5th Cir., Unit A, 1981) for the principle that an "employer [is] not vicariously liable under *respondeat superior* … despite *per diem* paid" for transporting drilling crew. Op., p. 21. However, the facts in *Pilgrim* are readily distinguishable.

| Pilgrim | Present Case |
|---|---|
| The employees were being transported to/from their personal homes. (at 983). | The employees were being transported to/from Amerimex-provided housing. |
| The payment was a "*travel allowance.*" (at 983). | The payment was a "Driver bonus" under the Amerimex-SandRidge contract. |

| Pilgrim | Present Case |
|---|---|
| *Per diem* travel allowance available to any rig member. (at 983). Rig crew decided from day to day which crewmember would receive that day's travel allowance. (at 983). | "Driver bonus" was only available to driller on that job under the Contract. |
| Most of the crew drove to a location in Iraan, met there, and then carpooled in one vehicle to the rig (at 983 n.3). | Evidence in the record indicates the entire crew stayed at the Amerimex housing and the rig every day. |
| Some employees drive their own vehicles, some employees camped near the rig, some carpooled daily (at 987). | Evidence in the record indicates Burchett drove all of his crew to and from the Amerimex housing and the rig every day. |
| Purpose: None stated. | Purpose: to make Amerimex competitive so crew did not quit mid-drilling. |

Normally, Amerimex would set a mobile bunkhouse at the drilling location for its crews. R. at 109, Murphree CCH Testimony 7:4–20. However, at this drill site, the bunkhouse was not permitted. *Id.* Therefore, Amerimex moved the bunkhouse to a location near Fort Stockton. *Id.* Usually, the Amerimex crew could walk to the bunkhouse after their shift was over. But, at this site, Amerimex paid Burchett to drive the crew.

Burchett was _not_ paid for his *personal* travel time—he was paid to transport the Amerimex crew. In Murphree's own words, the driving of the crew was not routine. R. at 109, Murphree CCH Testimony 8:15–9:16.

## III.    PRAYER

The Court should grant rehearing, request additional briefing and argument. In the alternative, Appellants pray the Court will reconsider and reverse its previous decision.

Respectfully submitted,

COTTON, BLEDSOE, TIGHE & DAWSON, PC
P.O. Box 2776
Midland, Texas 797002-2776
P: 432.685.5782 | F: 432.682.3672

By: */s/ David Lauritzen___*
David W. Lauritzen
State Bar No. 00796934
*DLauritzen@CBTD.com*

THE MALHOTRA LAW FIRM
319 North Grant Avenue
Odessa, Texas 79761
P: 432.580.4878 | F: 432.337.7283

By: _____
Rahul Malhotra
State Bar No. 00797781
*Rahul@TheMalhotraLawFirm.com*

HANNA LAW FIRM, PC
302 Chestnut Street
Abilene, Texas 79704
P: 325.673.6952 | F: 325.673.4496
Jon Hanna
State Bar No. 08919200
*JHanna7534@aol.com*

**ATTORNEYS FOR APPELLANTS**

## CERTIFICATE OF COMPLIANCE

I certify this document, excluding caption, signature, proof of service, certification, and this certificate, contains 2,426 words, according to the word count of the computer program used to prepare this document.

Rachel Ambler, State Bar No. 24081954
THE MALHOTRA LAW FIRM
**ATTORNEYS FOR APPELLANTS**

## CERTIFICATE OF SERVICE

I certify that a true copy of the above was served on each attorney of record or party in accordance with the *Texas Rules of Civil Procedure* on the 18th day of December, 2015.

**VIA EMAIL and efiling, which will automatically**
**serve a Notice of Electronic Filing.:**
Karen C. Burgess, *kburgess@richardsonburgess.com*
RICHARDSON + BURGESS, LLP
221 West 6th Street, Suite 900
Austin, Texas 78701-3445
**Attorneys for Amerimex, Appellee**

RACHEL AMBLER
THE MALHOTRA LAW FIRM
**ATTORNEYS FOR APPELLANTS**