United States Court of Appeals,

Fifth Circuit.

No. 93-1955.

Thomas E. PALMER and Delores Palmer, Plaintiffs-Appellees,

v.

Paul D. FLAGGMAN, D.O., et al., Defendants,

and

Marcus NEWTON, D.O., et al., Defendants-Appellees,

v.

UNITED STATES of America, on Behalf of Dennis N. GRAHAM, D.O., Movant-Appellant.

Sept. 3, 1996.

Appeals from the United States District Court for the Northern District of Texas.

Before WISDOM, KING, and DUHÉ, Circuit Judges.

WISDOM, Circuit Judge:

In this case, we decide whether under Texas law, a federal employee who acts as the "borrowed servant" of a private employer may simultaneously act within the scope of his federal employment in such a way as to make him immune from suit under the Westfall Act. Because we conclude that Texas law defining an individual's scope of employment is a separable inquiry from Texas law regarding the ultimate liability of the individual's employer, we find that a federal employee may obtain immunity under the Westfall Act, even while working as the borrowed servant of a non-federal employer. We therefore REVERSE the decision of the district court and REMAND the case for additional proceedings consistent with this ruling.

BACKGROUND

This case originated in a Texas state court as a medical malpractice action brought by the plaintiffs-appellees, Thomas and Delores Palmer, against the defendant-appellant, Dr. Dennis Graham, the defendant-appellee, Bedford-Northwest Community Hospital, Inc. ("NCH"), and several other

1

medical care providers. At the time of the alleged negligence, Dr. Graham was an active-duty commissioned officer in the United States Air Force, and was assigned to NCH to complete a residency in orthopedic surgery. Dr. Graham's salary was paid by the Air Force, and, after the completion of his residency, he was committed to serving an additional four years of active duty in the military.

When Dr. Graham began his service at NCH, he personally entered into a contract with the hospital which provided that he would "observe all rules and regulations of the hospital pertaining to residents." In addition, the Air Force and NCH entered into a "Medical Residency Agreement," which provided that:

> [A]lthough Fellow is an Air Force Officer, for the purposes of liability the Fellow is a servant of the institution. This is because the Fellow will be performing duties under the exclusive control and for the primary benefit of the institution. Therefore, the institution agrees to provide, at its own expense, liability insurance in an amount that will satisfy all foreseen or reasonably foreseeable claims made against the Fellow, as well as sufficient coverage to reimburse the United States for any indemnification required under 10 U.S.C. 1089(f).[1]

In March 1993, pursuant to 28 U.S.C. § 2679(d)(2),[2] the United States Attorney General certified that Graham was acting within the scope of his federal employment at the time of the alleged malpractice. The Attorney General then removed the case to federal court and substituted the United States as party defendant.[3] The United States then moved to dismiss the action on the grounds that the Palmers had failed to file an administrative claim within two years of the incident, as required by

---

[1] 10 U.S.C. § 1089 is a portion of the Gonzalez Act, which provides immunity to military medical personnel. As will be discussed in more detail later in the opinion, the protections of the Gonzalez Act have been broadened by the Westfall Act, which was enacted after the Air Force and NCH entered into the contract regarding Dr. Graham.

[2] 28 U.S.C. § 2679(d)(2) reads in relevant part:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a state court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States ... and the United States shall be substituted as the party defendant. This certification ... shall conclusively establish scope of office or employment for purposes of removal.

[3] *Id.*

28 U.S.C. § 2675(a).[4]

On September 16, 1993, the district court ruled that, under Texas law, Graham was not acting within the course and scope of his federal employment. The district court therefore denied the United States's motion to dismiss, ordered that Graham be reinstated as party defendant in place of the United States, and remanded the action back to state court for lack of subject matter jurisdiction. The United States filed a timely notice of appeal.

## DISCUSSION

This court conducts a *de novo* review of an Attorney General's scope of employment certification.[5] We give no judicial deference to the Attorney General's findings.[6] Nonetheless, the burden of proof lies with the plaintiff to show that the Attorney General's initial decision was incorrect.[7]

To determine whether or not a federal employee was acting within the course and scope of his employment, we apply the law of the state in which the alleged misconduct occurred.[8] Therefore we begin our analysis with the Texas Supreme Court's stated test for "scope of employment"

---

[4]28 U.S.C. § 2675(a) reads in relevant part:

> An action shall not be instituted upon a claim against the United States for money damages for ... personal injury or death caused by the negligent or wrongful act or omission of any employment of the Government while acting within the course and scope of his employment unless the claimant shall have first presented the claim to the appropriate Federal Agency....

[5]*Garcia v. United States,* 88 F.3d 318, 320-21 (5th Cir.1996); *Williams v. United States,* 71 F.3d 502, 505 (5th Cir.1995); *see also, Schrob v. Catterson,* 967 F.2d 929, 936 n. 3 (3d Cir.1992); *McHugh v. University of Vermont,* 966 F.2d 67, 72 (2d Cir.1992); *Nadler v. Mann,* 951 F.2d 301, 305 (11th Cir.1992); *Hamrick v. Franklin,* 931 F.2d 1209 (7th Cir.), *cert. denied,* 502 U.S. 869, 112 S.Ct. 200, 116 L.Ed.2d 159 (1991); *S.J. & W. Ranch, Inc. v. Lehtinen,* 913 F.2d 1538, 1543 (11th Cir.1990), *cert. denied,* 502 U.S. 813, 112 S.Ct. 62, 116 L.Ed.2d 37 (1991); *Nasuti v. Scannell,* 906 F.2d 802, 813 (1st Cir.1990).

[6]*Williams,* 71 F.3d at 505-506.

[7]*Id.*

[8]*Garcia,* 62 F.3d 126, 127 (5th Cir.1995).

3

enunciated in *Robertson Tank Lines, Inc. v. Van Cleave.*[9] According to *Robertson,* an employee acts within the course and scope of his employment when his actions are: 1) within the general authority given to him by his employer; 2) in furtherance of the master's business; and 3) for the accomplishment of the object for which he is employed.[10]

Applying the *Robertson* test to the present case, it appears Dr. Graham was acting within the course and scope of his employment with the Air Force. He was on active military duty in the United States Air Force, and was ordered to enter into the NCH residency program. That residency program furthered the business of the Air Force by providing specialized training to its physician. By completing his residency training, Dr. Graham was accomplishing the object of his employment by obtaining the necessary training to serve as an orthopedic specialist for the Air Force at the end of his residency.

Our inquiry is not so simple as the *Robertson* test, however. In this case, the agreements entered into between the Air Force and NCH, and between Dr. Graham and NCH, give NCH full control over Dr. Graham's actions in his residency. As such, Dr. Graham is the "borrowed servant" of NCH, and the Air Force cannot be liable for his conduct.[11]

The appellees argue, and the district court agreed, that under Texas law, the scope of employment inquiry also includes this larger issue of control and ultimate liability. Appellees therefore maintain that because the Air force did not retain control over Dr. Graham's activities at NCH, Dr. Graham could not have been acting within the scope of his federal employment at the time of the alleged misconduct, and is not eligible for immunity under the Westfall Act.

A. Federal Immunity Statutes

To analyze the appellees' argument, it is helpful to first examine the federal laws that relate to Dr. Graham's employment. Three related federal immunity statutes bear on the resolution of this

---

[9]468 S.W.2d 354 (Tex.1971).

[10]*Id.* at 359.

[11]*Hilgenberg v. Elam,* 145 Tex. 437, 198 S.W.2d 94, 95-96 (1946).

case: the Federal Torts Claims Act ("FTCA");[12] the Medical Malpractice Immunity Act ("the Gonzalez Act");[13] and the Federal Employees Liability Reform and Tort Compensation Act of 1988 ("the Westfall Act").[14]

The FTCA provides a remedy for persons injured by an employee of the Government who was "acting *within the course and scope of his office or employment,* under circumstances *where the United States, if a private person, would be liable to the claimant* in accordance with the law of the place where the act or omission occurred."[15] Thus, where the FTCA applies, the United States's waiver of sovereign immunity is limited by the same defenses available to private citizens, including the "borrowed servant" doctrine relevant in the present case.

The Gonzalez Act provides immunity to military medical personnel acting within the scope of their employment.[16] The Act provides this immunity to individual employees by requiring injured plaintiffs to proceed against the United States under the FTCA.[17]

Finally, the Westfall Act was enacted in 1988 to amend the FTCA. It was intended to provide absolute immunity to any federal employee acting within the "*scope of his office or employment.*"[18] Like the Gonzalez Act, it provides such immunity by making an action against the United States under the FTCA the exclusive remedy for the injured party.[19]

In 1991, the Supreme Court examined the interaction between the Westfall Act, the Gonzalez

---

[12]28 U.S.C. §§ 1346(b), 2671 et seq. (1988).

[13]10 U.S.C. § 1089 (1988).

[14]28 U.S.C. § 2679 (1988).

[15]28 U.S.C. § 1346(b) (emphasis added).

[16]10 U.S.C. § 1089(a).

[17]*Id.*

[18]28 U.S.C. § 2679 (emphasis added).

[19]28 U.S.C. § 2679(b)(1).

Act, and the FTCA in *United States v. Smith.*[20]  That case presented a medical malpractice suit filed in the Ninth Circuit against a military doctor stationed overseas.  It was undisputed that the military doctor acted within the course and scope of his federal employment at the time of the alleged misconduct, thereby arguably giving him immunity the Westfall Act, and requiring the substitution of the United States as the defendant and the continuation of the suit under the FTCA.  An exception to the FTCA, however, prevented the plaintiffs from obtaining recovery against the United States for injuries sustained abroad.[21]  And at that time, the Ninth Circuit had also ruled that Gonzalez Act immunity did not apply to torts committed overseas.[22]  This interplay between the statutes therefore eliminated the plaintiffs' remedy.  Seeking to avoid this result, the Ninth Circuit ruled that the Westfall Act was not intended to apply to federal employees in situations where the FTCA precluded a remedy against the United States.[23]

The Supreme Court reversed that decision, holding that the Westfall Act provided immunity to the military doctor acting in the course and scope of his employment, even though the FTCA exception precluded recovery for the plaintiffs.[24]  The Court reasoned that while section five of the Westfall Act makes the FTCA the exclusive means of recovery for any federal employee acting within the course and scope of his employment,[25] section six of the Act provides that the corresponding FTCA action "shall be subject to the *limitations and exceptions* applicable to those actions."[26]  This language, coupled with the Westfall Act's express inclusion of exceptions to immunity, led the court to its conclusion that "the required substitution of the United States as the defendant in tort suits

---

[20]499 U.S. 160, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991).

[21]*Id.* at 164, 111 S.Ct. at 1184.

[22]*Id.* at 171, 111 S.Ct. at 1187-88.

[23]*United States v. Smith,* 885 F.2d 650 (9th Cir.1989).

[24]499 U.S. at 166, 111 S.Ct. at 1185.

[25]28 U.S.C. § 2679(b)(1).

[26]28 U.S.C. § 2679(d)(4) (emphasis added).

6

would sometimes foreclose a tort plaintiff's recovery altogether."[27]

The *Smith* Court further found that the limitations of Gonzalez Act could not be used to limit Westfall Act immunity.[28] The Court based this holding on its finding that the Westfall Act was enacted as a means of *adding* to the immunity created by the Gonzalez Act, and its determination that the Gonzalez Act was never intended to create rights in favor of malpractice plaintiffs.[29]

B. *Smith's* application to the present case

The Supreme Court's decision in *Smith* affects the present case in two ways. First, *Smith's* discussion of the Gonzalez Act indicates that the district court in this case erroneously used the limitations of that Act as a justification for finding that the Dr. Graham did not act in the scope of his federal employment.[30] The district court found that the Gonzalez Act applied because it was expressly mentioned in the contract between NCH and the Air Force.[31] Yet, the contract, which pre-dated the enactment of the Westfall Act, merely serves to allocate liability between the United States and the NCH. It has no bearing on which immunity statute applies to Dr. Graham, who sought substitution in this case under the more expansive Westfall Act.[32] Thus, because the protections of the Gonzalez Act have been included in, and surmounted by the Westfall Act, the limitations of the Gonzalez Act are immaterial to Dr. Graham's immunity.[33]

Second, *Smith's* discussion of the interaction between Westfall Act immunity and "exceptions" to liability under the FTCA guides this court in its treatment of the possible application of the "borrowed servant" doctrine in this case. The "borrowed servant" doctrine is not an express

---

[27]*Smith,* 499 U.S. at 166, 111 S.Ct. at 1185.

[28]499 U.S. at 172, 111 S.Ct. at 1188.

[29]499 U.S. at 172, 111 S.Ct. at 1188.

[30]Order of the District Court at 9.

[31]Order of the District Court at 9.

[32]Notice of Removal at 2.

[33]*Smith,* 499 U.S. at 172, 111 S.Ct. at 1188.

7

"exception" to the FTCA that would prevent the plaintiffs from seeking a remedy against the United States. Instead, because the FTCA allows a plaintiff to recover against the United States only "to the same extent as a private individual in like circumstances,"[34] the "borrowed servant" doctrine could conceivably be a *limitation* on the United States's waiver of sovereign immunity.[35] Because FTCA actions brought pursuant to the Westfall Act are "subject to the *limitations and exceptions* [of the FTCA],"[36] a federal employee acting within the course and scope of his federal employment may therefore still retain Westfall Act immunity, even when a different state tort liability provision will ultimately prevent the plaintiff from recovering against the United States.[37]

Thus, we must now determine whether under Texas state law, the scope of employment inquiry is separable from the control inquiry and the ultimate issue of liability. Under the reasoning of *Smith,* if the two issues are separable, the "borrowed servant" doctrine will not prevent Dr. Graham from being within the "course and scope of his employment." If this is the case, Dr. Graham is entitled to Westfall Act immunity, and the United States is the appropriate defendant. On the other hand, if the two issues are not separable, then Dr. Graham could not have acted within the scope of his federal employment and simultaneously have acted as the borrowed servant of NCH. As such, Dr. Graham would not be entitled to Westfall Act immunity, and was properly re-substituted as defendant.[38]

## C. Texas *respondeat superior* law

Understandably, the Texas state law on this issue is sparse. The Westfall Act creates a unique

---

[34]28 U.S.C. § 2674.

[35]28 U.S.C. § 2674. *See also Ward v. Gordon,* 999 F.2d 1399, 1402 (9th Cir.1993). We use the word "conceivably" at this point, because we will address the exact nature of the Texas "borrowed servant" doctrine later in this opinion.

[36]28 U.S.C. § 2679(d)(4); *Smith,* 499 U.S. at 166, 111 S.Ct. at 1185.

[37]For a similar result, see *Ward,* 999 F.2d at 1402.

[38]Note that even if Dr. Graham is resubstituted as defendant, the federal court must retain jurisdiction over the case, and may not remand it to the Texas state court in which it originated. *Garcia v. U.S.,* 88 F.3d at 327 (5th Cir.1996).

8

situation in which the parties have an interest in proving that an employee acted within the scope of his or her employment, without regard for the ultimate issue of the employer's liability. In contrast, the model tort case answers the scope of employment issue only in the context of assigning liability.

Thus, Texas cases which address course and scope of employment are generally cases in which the tortfeasor has only one potential employer.[39] In contrast, Texas cases involving two "employers" generally resolve only the issue of which employer had "control" over the tortfeasor, and hence the liability through the "borrowed servant" doctrine.[40] Because answering the control question assigns the liability in these cases, the Texas courts have not elaborated on whether the tortfeasor was also within the scope of the non-liable defendant's employment, or whether a tortfeasor is legally able to act simultaneously within the scope of employment of two defendants where only one is ultimately liable.

Because Texas courts have not directly addressed this issue, we must decide it as we believe the Texas Supreme Court would have decided it, if confronted with the issue directly.[41] In so doing, we look at all available data, including related case law, Restatements of Law, treatises, and other commentary, keeping in mind that we must reach the result which we believe the Texas court would be most likely to reach.[42]

The appellees have several arguments in support of their position that the *Robertson* test for course and scope of employment also includes the ultimate issue of liability. First, they assert that the Westfall Act's scope of employment determination is governed by Texas *respondeat superior*

---

[39]*Garcia,* 88 F.3d at 320-21; *Robertson,* 468 S.W.2d at 359; *London v. Texas Power & Light Co.,* 620 S.W.2d 718, 720 (Tex.Civ.App.1981).

[40]*J. Robinson Sons, Inc. v. Wigart,* 431 S.W.2d 327, 330 (Tex.1968), *overruled on other grounds, Sanchez v. Schindler,* 651 S.W.2d 249 (Tex.1983); *Hilgenberg,* 145 Tex. 437, 198 S.W.2d 94 (Tex.1946); *Lara v. Lyle,* 828 S.W.2d 536, 538 (Tex.App.1992).

[41]*Pilgrim v. Fortune Drilling Co., Inc.,* 653 F.2d 982, 984 (1981); *Stevens Industries, Inc. v. Maryland Casualty Co.,* 391 F.2d 411, 413 (5th Cir.), *cert. denied,* 392 U.S. 926, 88 S.Ct. 2285, 20 L.Ed.2d 1386 (1968).

[42]*Pilgrim,* 653 F.2d at 984; *Putnam v. Erie Manufacturing Co.,* 338 F.2d 911, 917 (5th Cir.1964).

law[43], then cite Texas state court cases that indicate "control" is necessary to impose vicarious liability under Texas *respondeat superior* law.[44]  Appellees also support their argument with this court's decision in *Pilgrim v. Fortune Drilling Co.*,[45] in which we held that under Texas law, "the test of a master's *liability* for the negligent acts of his servant is whether the servant had the right and power to direct and control the servant in the performance of the casual act or omission at the very instant of the negligence."[46]

The appellees' argument fails to address the question before this court.  Although it is true that we are required to apply Texas *respondeat superior* law to determine Dr. Graham's scope of employment, we are not required to apply the entire body of *respondeat superior* law, but only that portion of the law that resolves the scope of employment issue.  Any related *respondeat superior* doctrines are nothing more than the type of defenses available to private individuals, and irrelevant to a Westfall Act scope of employment certification.[47]

Therefore, we are not convinced by the appellees' reliance on *Pilgrim* and related Texas cases. In *Pilgrim,* which was a single employer case, we held only that Texas law required "control" to impose *liability* on the master, and did not hold that "control" was required to be within the scope of the tortfeasor's employment.[48]  The Texas cases relied upon by plaintiffs similarly address liability

---

[43]*Williams v. United States,* 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955);  *White v. Hardy,* 678 F.2d 485 (5th Cir.1982);  *Arbour v. Jenkins,* 903 F.2d 416 (6th Cir.1990).

[44]*American Nat'l Ins. Co. v. Denke,* 128 Tex. 229, 95 S.W.2d 370, 373 (1936) (adopting rule from Restatement of Agency that "the test of one's liability for the act or omission of his alleged agent is his right and power to direct and control his imputed agent at the very instant of the act or omission");  *Parmalee v. Texas & New Orleans R.R. Co.,* 381 S.W.2d 90, 94 (Tex.Civ.App.1964).

[45]653 F.2d 982 (5th Cir.1981).

[46]*Id.* at 986.  (emphasis added)

[47]*Smith,* 499 U.S. at 166, 111 S.Ct. at 1185.

[48]In *Pilgrim,* we stated that the employers' lack of control over the employee while commuting was a persuasive factor in finding that the employee acted outside the scope of his employment. 653 F.2d at 987.  In commuting cases, however, as with many of the single employer cases, the control element is needed to distinguish between being "on-duty" and "off-duty," arguably the

10

as a whole, rather than the narrower issue of scope of employment.[49] Furthermore, at least one Texas

appellate court has criticized the cases relied upon by the plaintiffs, specifically stating that "control"

is not even required to impose liability, and that the *Robertson* test has now superseded the earlier

"control" based tests.[50] Thus, the appellees still have not addressed why this court should require

more for the scope of employment inquiry than the test set forth by the Texas Supreme Court in

*Robertson.*

Appellees also argue that the scope of employment issue is resolved by the contract between

the Air Force and NCH assigning control of Dr. Graham to the NCH "for the purposes of liability."

Again, this argument fails to address distinctly the scope of employment separately from the ultimate

issue of liability. Merely showing that the Air Force cannot be held liable for Dr. Graham's alleged

misconduct still fails to answer whether Dr. Graham acted within the scope of his employment for

the Air Force at the time of the alleged misconduct.

Appellees also mistakenly rely on Texas cases that indicate "control" is required for a

tortfeasor to be the "employee" of a defendant, rather than an independent contractor.[51] Again, these

---

only issue in a single employer case. Id.; *see also, Garcia,* 88 F.3d at 320-321. In contrast, in the present case, it is clear that Graham was "on-duty" for both employers at the time of the accident, even though only one employer was able to control Graham's actions. (Graham had active duty status in the Air Force, was under direct orders by the Air Force to complete his residency at NCH, and was subject to disciplinary action if he failed to do so). Thus, the "control" issue must not be required to determine the line between work and personal matters. Instead, "control" determines the larger issue of liability, and is applied to the scope of employment determination only where that is the ultimate issue in the case. In this case, the ultimate issue of liability is in the "borrowed servant" doctrine, allocating liability between multiple employers.

[49]*Denke,* 95 S.W.2d at 373; *Parmalee,* 381 S.W.2d at 94.

[50]*Darensburg v. Tobey,* 128 Tex. 229, 887 S.W.2d 84, 89 (Tex.Civ.App.1994), *writ denied* ("To the extent that a conflict exists between the two rules, we hold that the later [*Robertson* ] test controls over the earlier *Denke* test").

[51]*Thompson v. Travelers Indem. Co. of R.I.,* 789 S.W.2d 277, 278 (Tex.1990) ("the test to determine whether an employee is an employee or an independent contractor is whether the employer has the right to control the progress, details and methods of operation of the employee's work"); *Travelers Ins. Co., v. Ray,* 262 S.W.2d 801 (Tex.Civ.App.1953) (To constitute an "employee" within compensation laws, there must exist between the parties the relationship of master and servant in the broad sense that the one has the ultimate control and direction over the

11

cases answer a question that is not before the court. Federal law directs that members of the military are "employees" of the federal government.[52] Dr. Graham was clearly not acting as an independent contractor of the United States government, and Graham's status as employee or independent contractor of NCH is irrelevant to his Westfall Act certification. Thus, the cases relied upon by the appellees are irrelevant to the question at hand.

Finally, appellees urge us to follow the logic of *Afonso v. City of Boston,*[53] in which a Massachusetts district court refused to grant Gonzalez Act immunity under facts similar to the present case.[54] This case is not analogous to the present one, however. Even if Massachusetts *respondeat superior* law were identical to Texas law, the *Afonso* case pre-dated both the Westfall Act and the Supreme Court's *Smith* decision, and therefore did not address the puzzle that is currently before this court.

In contrast to the appellees' arguments, there are several factors that argue in favor of the appellants' position, most notably the existence of a specific test in Texas state law for "scope of employment" that does not include the "control" element sought by the appellees.[55] We are particularly disinclined to read an additional "element" into this enunciated test, when that extra element is offered by the plaintiffs-appellees, who carry the burden of demonstrating that Dr. Graham was not acting under the course and scope of his federal employment,[56] and who have not offered persuasive arguments that the issue of control is inseparable from the scope of employment test.

In addition, Texas law offers us several clues that the two issues are separable. For instance,

---

other); *Dumas v. Muenster Hospital,* 859 S.W.2d 648, 651 (Tex.Civ.App.1993) (Physicians are generally independent contractors).

[52]28 U.S.C. § 2671.

[53]587 F.Supp. 1342 (D.Mass.1984).

[54]*Id.* at 1347.

[55]*Robertson,* 468 S.W.2d at 354.

[56]*Williams,* 71 F.3d at 505-506.

12

it is clear under Texas law that a person can serve a "general" employer and a "special" employer simultaneously, while assigning *respondeat superior* liability only to the "special employer" who had control over the act in question.[57] Such liability can be awarded to a "special employer" even where in the case of a conflict in orders, the employee would be likely to follow the orders of the "general employer," if it is understood between the employers that the employee owes allegiance to the "special employer" as to one particular act.[58] We see no distinction between simultaneously "serving" two masters, and acting within the "scope of employment" of two employers.

Texas law also tells us that in a single employer case, a particular action can serve more than one purpose, while still remaining within the scope of employment.[59] Specifically, an action may benefit the employee personally, but still fall within the course and scope of his employment, so long as the purpose of the action still benefits the master to an appreciable extent.[60] This reasoning should apply equally to the present case, except that in this case the extra beneficiary is not the employee personally, but the second employer. Thus, just because Graham's actions primarily benefitted the NCH, does not mean that they could not also fall within the course and scope of Graham's federal employment.

In addition, we note that, in the absence of the written agreement between the Air Force and NCH, the "borrowed servant" doctrine could conceivably not absolve the Air Force of liability under Texas law. At least one Texas court has stated that "unless the obligations of the masters conflict ...

---

[57]*J.A. Robinson & Sons v. Wigart,* 431 S.W.2d 327, 330 (Tex.1968), *overruled on other grounds, Sanchez v. Schindler,* 651 S.W.2d 249 (Tex.1983) ("the important question is not whether or not he remains the servant of the general employer as to matters generally, but whether or not as to the act in question, he is acting in the business of and under the direction of one or the other"); *Harrison v. Harrison,* 597 S.W.2d 477, 485 (Tex.Civ.App.1980); *Carr v. Carroll,* 646 S.W.2d 561, 563 (Tex.Civ.App.1982).

[58]*Robinson,* 431 S.W.2d at 330.

[59]*Best Steel Bldgs., Inc. v. Hardin,* 553 S.W.2d 122, 128 (Tex.Civ.App.1977).

[60]*Id.*

there is no reason to exculpate one and bind the other vicariously for the sin of the servant."[61] Even if the borrowing master is liable for the acts of the servant, "the general employer remains liable if the act fell within the scope of the employee's general employment."[62] The borrowed servant inquiry seems to become relevant only after one determines whether an employee's actions are within the scope of his general employment.

This reasoning is demonstrated in *Porter v. Puryear,*[63] a malpractice action filed against two osteopathic physicians and an anesthetist for malpractice. In that case Texas Court of Appeals found that the evidence showed that the physicians were engaged in a *joint* venture, and that the anesthetist, in administering anesthetic, performed the duty for which he was employed and paid by one of such physicians, so as to render immaterial the borrowed servant rule, under which the jury had found that the employing physician was not liable for the anesthetist's acts because he was acting under the other physician's direction and control.[64] Although this case was reversed for lack of evidence of proximate cause, it is indicative that Texas courts see no problem with the idea of one employee serving two employers at the same time, even if one retains ultimate control over the employee's actions.

In sum, nothing in Texas law indicates that the stated test for scope of employment in *Robertson v. Van Cleave Tank Lines* also includes an additional element of control over the tortfeasor's actions. Instead, we find that the element of control is relevant only to the separate issue of ultimate liability.

Therefore, to obtain Westfall Act immunity, Dr. Graham was only required to show that his actions were appropriately within the scope of his federal employment as defined by the *Robertson* test. As previously discussed, Dr. Graham's residency at NCH satisfies this test. We therefore find

---

[61]*Lara v. Lile,* 828 S.W.2d 536, 538 n. 2 (Tex.App.1992, no writ) (citing Restatement (Second) of Agency § 227 (1958)).

[62]*Id.* at 538, *accord Ward,* 999 F.2d at 1404.

[63]258 S.W.2d 182, (Tex.Ct.Civ.App.1953), *reversed on other grounds,* 153 Tex. 82, 264 S.W.2d 689 (1954).

[64]*Porter,* 258 S.W.2d at 187.

that the Attorney General properly removed the case to federal court and substituted the United States as defendant. We therefore REVERSE the district court's finding that Dr. Graham was not acting within the course and scope of his employment, and REMAND the case for further proceedings consistent with that holding.