**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 97-50609
_____

LARRY B. STARNES and LINDA STARNES, Individually and as
Representatives of the Estate of KIMBERLY STARNES, Deceased,

Plaintiffs-Appellants,

VERSUS

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
For the Western District of Texas
_____
May 5, 1998

Before REAVLEY, DeMOSS, and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge.

Larry and Linda Starnes appeal the decision of the district court granting Defendant-Appellee United States of America summary judgment.  Finding error, we reverse and remand.

BACKGROUND

Larry and Linda Starnes are the natural parents and representatives of the estate of their deceased daughter, Kimberly. A few days before Christmas in 1992, Kimberly was hospitalized at Santa Rosa Children's Hospital (hereinafter "SRCH") for care of intestinal distress and dehydration.  SRCH is a private hospital in

San Antonio, Texas. Robin Hardiman, M.D., was a Brooke Army Medical Center resident on pediatric surgical rotation at SRCH. Dr. Hardiman was on active duty in the United States Army at the time and was on rotation at SRCH pursuant to a Military Training Agreement (hereinafter "the Agreement") between the United States Army and SRCH. Under the Agreement, military residents were assigned to SRCH to do a two to three month pediatric surgery rotation. During her residency at SRCH, Dr. Hardiman's salary was paid by the government.

On December 22, 1992, Dr. Hardiman inserted a venous catheter line which perforated Kimberly's heart. Kimberly died on December 23, 1992. The Starnes allege that the negligent placement of the subclavian line was a proximate cause of Kimberly's death.

After filing an administrative claim, the Starnes filed suit against the United States under the Federal Tort Claims Act (FTCA) based upon the alleged negligence of Dr. Hardiman. The government filed a motion to dismiss or, in the alternative, motion for summary judgment, contending that the United States was not liable because Dr. Hardiman was the "borrowed servant" of SRCH. The district court granted the government's motion for summary judgment and dismissed the plaintiffs' suit after concluding that Dr. Hardiman was the borrowed servant of SRCH. The Starnes timely filed a notice of appeal.

## ANALYSIS

This court reviews a district court's grant of summary

judgment *de novo*. *Stults v. Conoco, Inc.*, 76 F.3d 651 (5th Cir. 1996). The district court held that the borrowed servant doctrine precluded the plaintiffs from succeeding on their FTCA action. Under the FTCA, the United States is liable for the torts of its employees to the same extent as a private party would be under like circumstances, according to state law. 28 U.S.C. § 2671, *et seq.* Under the FTCA, the United States can assert the same defenses available to private citizens, including the borrowed servant defense. *See Palmer v. Flaggman*, 93 F.3d 196, 199 (5th Cir. 1996).

Under Texas law, the employee of a general employer may become a borrowed servant of another. Respondeat superior liability is assigned to the borrowing employer who had control over the act in question. The right to control is the key to determining borrowed servant status. *Dodd v. Twin City Fire Ins. Co.*, 545 S.W.2d 766, 768 (Tex. 1977).

When a written contract between two employers expressly provides that one or the other shall have the right of control, solution of the question is relatively simple. *Producers Chemical Co. v. McKay*, 366 S.W.2d 220 (Tex. 1963). *But see Exxon Corp. v. Perez*, 842 S.W.2d 629, 630 (Tex. 1992)(a "contract between two employers providing that one shall have the right of control over certain employees is a factor to be considered, but it is not controlling."). In reaching its conclusion, the district court relied upon Paragraph 7 of the Agreement which provides:

> It is further understood and agreed that the military residents while undergoing training at the training institution will be **under the immediate professional supervision and control of the medical specialty teaching**

3

**chief at the training institution** or his/her authorized designee. All professional services rendered to patients of the training institution by military residents will be properly monitored and supervised by training institution's staff personnel. (emphasis added).

The district court concluded that under the contract Dr. Hardiman was the borrowed servant of SRCH.

The government maintains that Paragraph 7 of the Agreement is dispositive regarding borrowed servant status. We disagree. The Agreement provides that residents are under the professional supervision and control of the medical specialty teaching chief, not the hospital. If the parties to the Agreement wanted SRCH to have exclusive control over the residents, they could have provided such a provision in the Agreement. Instead, the Agreement states that residents are under the administrative direction of other physicians at the hospital. These physicians are independent contractors with privileges at the hospital, and under Texas law, hospitals are not liable for the negligence of physicians who are independent contractors. *See Drennan v. Community Health Inv. Corp.*, 905 S.W.2d 811, 818 (Tex. App. -- Amarillo 1995, writ denied).

The government argues that a recent Fifth Circuit decision, *Palmer v. Flaggman*, 93 F.3d 196 (5th Cir. 1996), supports its position that Dr. Hardiman was the borrowed servant of SRCH. The issue in *Palmer* was whether a doctor had been acting within the scope of his federal employment for the purposes of Westfall Act immunity while completing a residency at a private hospital. Although the government's liability was not at issue in *Palmer*, the

4

court noted that the agreement between the Air Force and the hospital gave the hospital full control over the doctor during his residency. Thus the court concluded that the doctor was the borrowed servant of the hospital, and the government could not be liable.

However, the agreement in *Palmer* gave exclusive control over the military residents **to the hospital**. 93 F.3d at 198. Also the hospital agreed to obtain liability insurance to satisfy any claims brought against the resident. *Id.* The contract in *Palmer* was much clearer regarding borrowed servant status.

In this case a number of factors leads the court to the conclusion that Dr. Hardiman was not the borrowed servant of SRCH. First, other portions of the Agreement indicate that the resident is responsible for patient care, and that the United States is liable for the negligence of the resident while she is undergoing training. Paragraph 10 of the Agreement provides that the resident is responsible for the "workup, evaluation, and management of patients assigned to him/her by members of the Training Institution staff." Paragraph 3 of the Agreement provides:

> Federal Tort Claims Act (28 U.S.C. § 2671, *et seq.*) provides that the United States is liable for the negligent and wrongful acts or omissions of United States employees during the scope of their employment. The term "United States employees" includes healthcare personnel performing training covered by this agreement.

Paragraph 3 indicates that the United States is liable for the negligence of residents during training covered in the Agreement.

In response to the motion for summary judgment, the Starnes submitted evidence from physicians at SRCH indicating that the

5

hospital does not supervise or control the medical treatment provided to patients by staff physicians and military residents. Dr. Richard Wayne, the Medical Director and Chief Executive Officer at SRCH, attested that residents are under the administrative direction of physicians who operate independently of the hospital, and that SRCH does not direct or control patient care by residents.

Finally, Texas courts have yet to apply the borrowed servant doctrine to physicians. In the medical malpractice context, the borrowed servant doctrine in Texas has only been applied to nurses. *See Sparger v. Worley Hospital, Inc.*, 547 S.W.2d 582 (Tex. 1977); *Elizondo v. Tavarez*, 596 S.W.2d 667 (Tex. Civ. App. -- Corpus Christi 1980, writ ref'd n.r.e.). Although Dr. Hardiman was a resident, as opposed to an attending physician, the court is not unmindful of the expansive duties of residents at a hospital.

The lack of an express provision indicating that SRCH had control over Dr. Hardiman's patient care, the provisions of the Agreement which did indicate that the United States accepted liability for the negligence of its employees undergoing training, and the absence of Texas case law applying the borrowed servant doctrine to physicians, lead the court to conclude that the borrowed servant defense does not apply to absolve the government of liability for Dr. Hardiman's alleged negligence.

For the foregoing reasons, the judgment of the district court is REVERSED and REMANDED for further proceedings.

REVERSED AND REMANDED.