Peter ANDERSON, Plaintiff,

v.

**GOVERNMENT OF THE VIRGIN ISLANDS d/b/a Virgin Islands Police Department, Ramon Davila, Kenneth Map, Robert Soto, Elton Lewis, and Derek Hill, Defendants.**

No. CIV.2001–149.

District Court, Virgin Islands,
D. St. Thomas and St. John.

April 22, 2002.

---

Lee J. Rohn, Pamela Wood Colon, St. Croix, VI, for the plaintiff.

Fidel A. Sevillano Del Rio, Hato Rey, PR, for the defendant.

## MEMORANDUM

MOORE, District Judge.

Ramon Davila ["Davila" or "defendant"] and the United States have moved to substitute the United States for Davila as defendant under section 8 of the Employees Liability Reform and Tort Compensation Act of 1988, 28 U.S.C. § 2679. Before the Court is whether, under Virgin Islands law, Davila's allegedly tortious acts, committed while he was Commissioner of the Virgin Islands Police Department, were "within the scope" of his employment with the United States Customs Service. Because the alleged acts (1) were of the type the United States employed Davila to perform, (2) occurred within his assignment as Commissioner, and (3) were performed in part to further the United States's interests, I conclude that they fell within the scope of his federal employment. Accord-

ingly, I will grant the motion to substitute with respect to the common-law claims.

## I. FACTUAL BACKGROUND

In 1995, the Governor of the Virgin Islands, Roy Lester Schneider, inquired of the United States Customs Service whether Davila, a criminal investigator, could help the Virgin Islands government "fulfill the emergency need for coordination of Federal and local law enforcement ... in an effort to combat the criminal elements now plaguing the Territory." (Davila Mot. to Subst., Attach. B.) Subsequently, the United States Customs Service and the Government of the Virgin Islands entered into an assignment agreement, pursuant to section 402(a) of the Intergovernmental Personnel Act of 1970, 5 U.S.C. § 3371–3375, through which the Customs Service assigned Davila to serve as Commissioner of the Virgin Islands Police Department ["VIPD"]. (*Id.*, Attach. A.) The United States acceded to Governor Schneider's request because

> Davila's assignment will provide developmental opportunity which will enhance his performance in his position with [the] U.S. Customs Service; it will strengthen intergovernmental relations between the U.S. and the Virgin Islands, as well as assist in the transfer of new ideas and technology.

(*Id.* at 2.) According to the agreement, Davila, upon completion of his service for the Government of the Virgin Islands, would be placed in a position of responsibility with Customs "to utilize the skills developed and refined on this assignment to the Virgin Islands." (*Id.*)

As Police Commissioner of the VIPD, Davila was to "[d]irect, control, and supervise the [VIPD], as well as advise the Governor and Executive Branch on policies and operational matters relating to drug enforcement, drug supply and demand reduction, and other relative matters." (*Id.*) The agreement further provided that the Government of the Virgin Islands would determine Davila's workweek, hours of duty, holidays, and maintain his leave record. The United States continued to pay Davila his federal salary, and the Government of the Virgin Islands reimbursed the United States for the salary that Davila's position as Commissioner earned.[1] (*Id.* at 3.) The Government of the Virgin Islands was responsible for all of Davila's travel, relocation, and other associated expenses.

In his fourth amended verified complaint, Peter Anderson ["Anderson" or "plaintiff"] alleges that Davila, while Commissioner, harassed and discriminated against him based on his race and national origin.[2] (Anderson Compl. ¶ 11.) Anderson maintains that Davila is liable to him for (1) intentional infliction of emotional distress, (2) defamation, (3) invasion of privacy, (4) placing him in a "false light," (5) deprivation of his constitutional rights in violation of 42 U.S.C. § 1983, and (6) punitive damages.[3]

---

1. Davila's federal salary was, at the time of the agreement, $65,000, and the then-salary for the position of VIPD Commissioner was $62,610. The federal government agreed to absorb the difference between the federal and local salaries.

2. Anderson is suing several other individuals along with the Government of the Virgin Islands. The United States has moved to substitute for defendant Davila only.

3. Anderson also sought injunctive relief ordering the defendants to cease all surveillance activities against him and his attorney. This Court's October 16, 1996 order granting his request was subsequently vacated in part and remanded. *See Anderson v. Davila,* 125 F.3d 148, 163–64 (3d Cir.1997).

Anderson avers that Davila refused to appoint him to specific professional positions and denied him work assignments because he is not a "native-born Virgin Islander." (*Id.* Compl. ¶¶ 11–13.) Anderson asserts that Davila engaged in a pattern of "racial slurs, false derogatory comments motivated by racial bigotry" and "demeaning comments" based on Anderson's heritage. (*Id.* ¶ 12.) Plaintiff alleges that, when he complained about Davila's conduct, Davila then retaliated against him by increasing the harassing behavior. (*Id.* ¶ 14.) Anderson maintains that Davila's conduct resulted in his constructive discharge from the VIPD. (*Id.* ¶ 15.)

Anderson alleges that he publicly accused Davila and his codefendants of discriminating against him and that, consequently, Davila ordered "an illegal investigation, surveillance, and . . . audio surveillance" of Anderson and his attorney. (*Id.* ¶ 20.) Anderson asserts that Davila and his codefendants have, in spite of court orders, continued to investigate and observe him. (*Id.* ¶ 25.)

Davila and the United States move this Court to substitute the United States as defendant in place of Davila with respect to Anderson's common law tort claims, pursuant to section 8 of the Federal Employees Liability Reform and Tort Compensation Act of 1988 ["The Westfall Act"], 28 U.S.C. § 2679(d). (Davila Not. of

Subst. ¶ 1.) As is required by the Westfall Act, Jeffrey Axelrad, Director of the Torts Branch, Civil Division, of the United States Department of Justice, has certified "on the basis of the information now available with respect to the incidents alleged in the Complaint, that [Davila] was acting within the scope of his employment as an employee of the United States at the time of the incidents out of which plaintiff's claims allegedly arose." [4] (Davila Mot. in Compl., Attach. 1.) In addition, the United States avers that Anderson's claim under 42 U.S.C. § 1983 must be dismissed because this provision does not permit a cause of action against federal employees such as Davila. (Mot. to Subst. ¶ 9.)

Anderson challenges the motion to substitute and argues that the certification should be rejected because (1) it purports to deny Anderson his right to pursue his 42 U.S.C. § 1983 claim against Davila individually and (2) the alleged tortious and intentional conduct did not occur within the scope of Davila's employment. (Anderson Opp. to Subst. at 2.) With respect to his section 1983 claim, Anderson concedes that Davila remained a federal employee while serving as Commissioner of the VIPD, but avers that Davila's status as a federal employee does not determine whether an unconstitutional act was committed under color of state or territorial law. (*Id.* at 6.) Alternatively, Anderson argues that Davila may be held liable un-

---

4. Davila and the United States have submitted two certifications in this matter. The first certification was signed by Guillermo Gil, United States Attorney for the District of Puerto Rico. (Davila Not. of Subst., Exh. 1.) Because the certification was signed by the United States Attorney for Puerto Rico, as opposed to the United States Attorney for the Virgin Islands, I questioned the legitimacy of this certification and ordered that a corrected notice be filed. (Order, Civ. No.2001–149 (D.V.I. February 26, 2001).) Davila and the United States submitted a second certifica-

tion, signed by Jeffrey Axelrad ["Axelrad"] of the Department of Justice. (Davila Mot. in Compl., 2001, Attach. 1.) This Court subsequently accepted the latter certification. (Order, Civ. No.2001–149 (D.V.I. August 22, 2001).) In certifying that Davila's actions were within the scope of his federal employment, Axelrad relied on the facts contained in Anderson's Third Amended Verified Complaint. (*See* Davila Mot. in Compl., Attach. 1.) Although there is now a Fourth Amended Verified Complaint, the alleged factual bases of the lawsuit are the same.

der federal law or in his individual capacity for constitutional violations, under *Bivens v. Six Unknown Named Agents of the FBI*,[5] even if he did not act under color of territorial law. (*Id.* at 8–9.)

Anderson contends that Davila could not have been acting within the scope of his employment when Davila (1) photographed him, (2) requested an illegal wiretap from Virgin Islands Telephone Company ["VI-TELCO"], or (3) conducted surveillance of him. Davila and the United States counter that Anderson has failed to provide specific evidence establishing that Davila's conduct was outside of the scope of his federal employment and maintain that Davila's conduct "occurred within the authorized limits of his federal as well as territorial employment." (Davila's Reply to Plaintiff's Opp. at 23–25.)

## II. DISCUSSION

### A. The Federal Tort Claims Act, as Amended by the Westfall Act, Allows the United States To Be Substituted as Defendant in place of a Federal Employee Acting Within the Scope of His Office or Employment

Assuming a plaintiff files an administrative claim and complies with certain administrative procedures under the Federal Tort Claims Act ["FTCA"], 28 U.S.C. §§ 1346(b), 2671–2680, the federal government may be sued for the negligence of its employees under the same circumstances

and to the same extent as a private party. In 1988, Congress enacted the Westfall Act to amend the FTCA to preserve[6] the absolute immunity of federal employees from liability for common law tort claims arising out of their employment by limiting the remedy for such claims exclusively against the United States.

> The remedy against the United States ... for injury or loss of property ... arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee.

*Id.* § 2679(b)(1). This provision does not apply, however, to claims brought against a federal employee for violations of (1) the United States Constitution or (2) a federal statute. *Id.* § 2679(b)(2). The Westfall Act further provides that

> [u]pon certification by the Attorney General that the defendant employee was *acting within the scope of his office or employment* at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States ... and the United

---

5. 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

6. Before 1988, federal employees enjoyed absolute immunity from common law tort claims arising out of their employment. In 1988, the Supreme Court limited this immunity, and held that federal employees acting within the scope of their office or employment were immune from common law tort liability only if their actions were (1) within the scope of their employment and (2) discretionary in

nature. *Westfall v. Erwin*, 484 U.S. 292, 300, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988). In response to this decision, Congress enacted the Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly referred to as the Westfall Act, and restored their immunity by establishing an exclusive remedy against the United States under the FTCA from state law tort claims. *See* 28 U.S.C. § 2679(b)(1); *see also Schrob v. Catterson*, 967 F.2d 929, 934 (3d Cir.1992).

States shall be substituted as the party defendant.

*Id.* § 2679(d)(1) (emphasis added).

The Attorney General's certification does not conclusively establish the substitution of the United States as defendant in place of the employee, and is subject to *de novo* judicial review. *Gutierrez de Martinez v. Lanagno,* 515 U.S. 417, 435–37, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995). Such a certification is, however, *prima facie* evidence that the alleged tortious conduct occurred within the scope of the federal employee's employment. *Brumfield v. Sanders,* 232 F.3d 376, 379 (3d Cir.2000), *cert. denied,* 532 U.S. 958, 121 S.Ct. 1486, 149 L.Ed.2d 374 (2001). A plaintiff challenging the certification has the burden of coming forward with specific facts rebutting it. *Schrob,* 967 F.2d at 936. Immunity resulting from substitution arises only upon a judicial determination that the employee was acting within the scope of her or his employment. *Id.*

The Court will proceed along the following lines. First, I must determine whether Anderson has raised any claims to which the FTCA does not apply and for which the United States therefore may not be substituted. I find plaintiff's section 1983 claim that Davila violated his constitutional rights (Count V) to be such an excluded claim. Second, I must determine whether Davila was acting within the scope of his office or employment with Customs while performing his duties as Commissioner of the VIPD at the time of each incident out of which Anderson's territorial and common law claims arise. If so, the United States must be substituted as defendant for such of plaintiff's territorial and common law claims and the usual FTCA requirements will apply to such claims.

**B. The United States is not Substituted for Anderson's Claim under 42 U.S.C. § 1983**

█ In Count V of his complaint, Anderson alleges that Davila violated his constitutional rights in violation of 42 U.S.C. § 1983. The FTCA does not apply to claims alleging constitutional violations. 28 U.S.C. § 2679(b)(2). Accordingly, the United States may not be substituted for Davila for such claims. Davila asserts, however, that Anderson is precluded from bringing a section 1983 action against him altogether because this provision is inapplicable to federal officers or employees.

Under 42 U.S.C. section 1983,

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any ... person ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To successfully bring a section 1983 claim, a plaintiff must show that (1) the defendant acted under the color of territorial law and (2) his actions deprived the plaintiff of rights secured by the Constitution or federal statutes. *Anderson,* 125 F.3d at 159.

"Because section 1983 provides a remedy for violations of federal law by persons acting pursuant to state law, federal agencies and officers are facially exempt from section 1983 liability inasmuch as in the normal course of events they act pursuant to federal law." *Hindes v. FDIC,* 137 F.3d 148, 158 (3d Cir.1998). Under the law in this jurisdiction, however, "[i]t is a well-established principle ... that federal officials are subject to section 1983 liability when sued in their official capacity where they have acted under color of state law,

for example in conspiracy with state officials." *Id.*

■ Here, Davila was Commissioner of the VIPD when he allegedly investigated, photographed, and wiretapped Davila and his attorney. In addition, Anderson alleges that he acted in concert with his codefendants, also territorial employees. Whether Davila was a federal employee acting within the scope of his federal employment, he clearly was acting under the color of Virgin Islands law as Commissioner when the alleged acts were committed. Accordingly, I find that Anderson's section 1983 claim may proceed against Davila personally. *See Schrob*, 967 F.2d at 939 (noting that claims for constitutional violations continue against an individual defendant, even when substitution of United States is granted).

## C. Davila's Employment as Police Commissioner was within the Scope of His Employment with the United States Customs Service

The threshold question is whether Davila's allegedly tortious conduct occurred within the scope of his employment with the United States Customs Service. Jeffrey Axelrad, Director of the Torts Branch, Civil Division of the United States Department of Justice, has certified "on the basis of the information now available with respect to the incidents alleged in the Complaint, that defendant [Davila] was acting within the scope of his employment as an employee of the United States at the time of the incidents out of which plaintiff's claims allegedly arose."[7] (Davila Mot. in Compl., Attach. 1.) Because I conclude that Davila was acting within the scope of his federal employment, the Unit-

ed States must be substituted in place of Davila as the defendant in Anderson's common law claims of defamation, intentional infliction of emotional distress, invasion of privacy, and "false light."

■ Under the Intergovernmental Personnel Act ["IPA"], the head of a federal agency may arrange for the assignment of an employee of the agency to a state or local government "for work of mutual concern to his agency and the State or local government that he determines will be beneficial to both." 5 U.S.C. § 3372. In this instance, an employee, like Davila, continued to be a federal employee and was considered to be "on detail from a federal agency." *See id.* § 3373(a). (*See also* Mot. to Subst., Attach. C at 2.) The fact that Davila remained a federal employee, however, is not conclusive that he acted within the scope of his federal employment. *See Schrob*, 967 F.2d at 936 ("[T]he mere status of being a federal employee does not guarantee total immunity from the judicial process."). The "scope of employment" determination is based on Virgin Islands law. *See* 28 U.S.C. § 1346(b); *see also Schrob* 967 F.2d at 934 ("The scope of employment determination is made in accordance with the law of the place where the act or omission occurred."). Under Virgin Islands law, conduct of a servant is within the scope of employment if, but only if

 (a) it is of the kind he is employed to perform;

 (b) it occurs substantially within the authorized time and space limits;

 (c) it is actuated, at least in part, by a purpose to serve the master . . . .

RESTATEMENT[8] (SECOND) OF AGENCY ["RESTATEMENT"] § 228(1)(a)-(c) (1958).[9] Con-

---

7. Under FTCA regulations, the Attorney General delegated to Axelrad, as Director of the Torts Branch of the Civil Division, the authority to certify that Davila was acting within the scope of his employment. 28 C.F.R. § 15.3

8. Pursuant to V.I. CODE ANN. tit 1, § 4, the rules of decision in the courts of the Virgin Islands are the restatements of law where there exist no local laws to the contrary.

versely, conduct is not within the scope of employment if it is (1) different in kind from that authorized, (2) far beyond the authorized time or space limits, or (3) too little actuated by a purpose to serve the master. *Id.* § 228(2). Anderson may not defeat the motion by contending that Davila was not performing the work of a United States Customs officer, (Davila Depo. at 222–23), or that Davila was furthering only the goals of the Virgin Islands and not of the federal government and therefore he was not acting within the scope of his federal employment while serving as Commissioner of the VIPD.

When I apply the Restatement of Agency, I find that Davila's service meets all the criteria of section 228(1):(a) the duties Davila performed as Commissioner were clearly the kind he was employed by the United States to perform since the Customs Service assigned him on detail to the Virgin Islands; (b) all the conduct Anderson complains of took place while

Davila was detailed to the Virgin Islands; and (c) his conduct as Commissioner was motivated to further the goals of the United States—not only would his work as Commissioner enhance his job performance with the Customs Service through the experience and skills he developed as Commissioner, it would also strengthen intergovernmental relations between the United States and the Virgin Islands. (Davila Mot. to Subst., Attach. C at 2.)

 Accordingly, I conclude that Davila, to the extent that he was acting within the scope of his employment as Commissioner of the VIPD, was *also* acting within the scope of his federal employment.[10] Before I can determine whether the United States must be substituted for Davila, I must examine each of Anderson's common law tort claims to ascertain whether the actions alleged in each were within the scope of Davila's employment as Commissioner.[11]

9. The fourth requirement, that "if force is intentionally used by the servant against another, the use of force is not unexpectable by the master," is not implicated by the facts of this case. *See id.* § 228(1)(d).

10. At the August 31, 2001, hearing, Anderson argued that, because Davila had attested that he was working within the scope of employment for the Government of the Virgin Islands, he is now estopped from arguing that he was acting within the scope of employment for the federal government. Davila, in his motion for summary judgment, had earlier argued that the Government of the Virgin Islands was liable for his actions under the Virgin Islands Tort Claims Act and that, by representing him, the Government of the Virgin Islands conceded that he was acting within the scope of his authority as Police Commissioner. (Davila Mot. Summ. Judg., at 12.) This Court denied Davila's motion, finding that there remained issues of fact to be resolved by a jury. (Order, Civ. No.2001–149, at 6 (D.V.I. Sept. 3, 1999).) There is no estoppel, however, because Davila's actions were within the scope of both his Virgin Islands and federal employment.

11. Anderson avers that a "borrowed servant" relationship existed that precludes the substitution of the United States as defendant. The "loaned" or "borrowed" servant doctrine, however, is not a factor in determining whether an employee acted within the scope of employment. *See Palmer v. Flaggman,* 93 F.3d 196, 202 (5th Cir.1996) (holding that the "borrowed servant" and similar *respondeat superior* doctrines are "nothing more than the type of defenses available to private individuals, and irrelevant to a Westfall Act scope of employment certification"); *Ward v. Gordon,* 999 F.2d 1399, 1403–04 (9th Cir.1993) (vacating and remanding district court finding that federal employee was a "borrowed servant" and thus not working within the scope of his federal employment); *Aldridge v. Hartford Hosp.,* 969 F.Supp. 816, 821 (D.Conn.1996) (finding federal employee's borrowed servant status irrelevant to scope of employment issue).

In *Palmer,* the court considered whether a federal employee who was the "borrowed servant" of a private hospital could simultaneously act within the scope of his federal employment and thus, be immune from liability under the Westfall Act. The Court of Ap-

### 1. *Anderson's defamation claim (Count III)*

■ Anderson alleges that Davila defamed him by stating that Anderson, *inter alia*, (1) was incompetent, (2) was engaged in illegal activities, (3) was incapable of performing his work, (4) did not properly perform his job, (5) cheated on a promotional exam, and (6) had illegally and unethically talked to the news media during his employment. (Anderson Fourth Amend. Verif. Compl., ¶¶ 39–42.) According to Virgin Islands law,

> [i]f the scope of employment of a servant includes the making of statements concerning others which he believes to be true and privileged, the master is subject to liability for untrue and unprivileged defamatory statements made by the servant concerning such others, if the statements are otherwise within the scope of the servant's employment. Likewise, the master is liable if, to the hearers, the agent acts in the apparent scope of his employment.

RESTATEMENT § 247 cmt. a. Moreover,

> [i]t may be found to be within the scope of employment of a person managing a business to accuse another of wrongful conduct or to report to others the supposed wrongful conduct of an employee or other person.

*Id.* § 247 cmt. e. *See also Brumfield* 232 F.3d at 381 (affirming district court's finding that employee's defamatory comments about a coworker were within the scope of employment). Davila's alleged actions were, consequently, within the scope of his assignment as Police Commissioner. Accordingly, they also fell within the scope of his federal employment and, thus, the FTCA provides him immunity.

Under the FTCA, once the United States is substituted for a federal employee in a lawsuit, the suit "shall proceed in the same manner as any action against the United States filed pursuant to [the FTCA] and shall be subject to the limitations and exceptions applicable to those actions." 28 U.S.C. § 2679(d)(4). Claims "arising out of ... libel, slander, misrepresentation [or] deceit" are excepted from the "United State's general waiver of sovereign immunity." *Id.* § 2680(h). Because the allegedly defamatory conduct occurred within the scope of Davila's federal employment, Anderson is barred from bringing a defamation suit against the United States, and his Count III must be dismissed as against the United States.

peals for the Fifth Circuit noted that "[t]he Westfall Act creates a unique situation in which the parties have an interest in proving that an employee acted within the scope of his or her employment, without regard for the ultimate issue of the employer's liability." *Id.* at 201. The *Palmer* court then rejected the plaintiff's assertion that who retained "control" over the employee's day-to-day activities was a requisite factor in the "scope of employment" test, determining that "control" was a factor bearing on the broader issue of liability only, and not the "narrower issue of scope of employment." *Id.* at 202–03.

The Virgin Islands "scope of employment" test similarly does not depend on who controls or directs the employee. Even if it did, Davila could well have been both a "borrowed servant" *and* eligible for Westfall Act immunity. Virgin Islands law recognizes that "[a] person may be the servant of two masters, not joint employers, at one time as to one act, if the service to one does not involve abandonment of the service to the other." Restatement, § 226. Davila, therefore, could be simultaneously the servant of both the "lending" and "borrowing" master. *See Ward*, 999 F.2d at 1404 (affirming district court's finding that federal employee was a "borrowed servant" but vacating and remanding district court's finding that such status barred immunity under the Westfall Act); *Aldridge*, 969 F.Supp. at 821 (finding that, "regardless of whether [the federal employee] was a borrowed servant ... he was still acting within the scope of his federal employment").

*See Brumfield,* 232 F.3d at 382 (holding that, under section 2680(h), "defamation suits against the United States are prohibited").

### 2. *Anderson's claims of intentional infliction of emotional distress, "false light," and invasion of privacy (Counts II and IV)*

■Anderson alleges that Davila has intruded upon his physical solitude and seclusion through his surveillance and investigation of him. He argues that Davila could not have been acting within the scope of his employment when Davila (1) photographed him, (2) requested an illegal wiretap from VITELCO, or (3) conducted surveillance of him. In addition, he avers that Davila placed him in a "false light" by making public statements about him. Without any additional allegations, Count II incorporates by reference all the averments of the complaint, and asserts that Davila's actions constitute intentional infliction of emotional distress. (Davila Fourth Amend. Verif. Compl., ¶¶ 36–38.)

In determining whether these alleged actions fall within the scope of Davila's employment as Commissioner and hence, within the scope of his federal employment, I look to whether, among other things, this conduct (1) is commonly performed by police officers, (2) is outside the activities of the Virgin Islands Government, (3) is the of the type which the United States might have reason to expect will be done, and (4) is similar in quality to the legitimate authorized actions. RESTATEMENT § 229(2). Virgin Islands law recognizes that "[a]n act, although forbidden, or done in a forbidden manner, may be done within the scope of employment," particularly when "the master has reason to expect that such an act will be done." *Id.* §§ 229(2)(f), 230. Criminal or tortious acts may also fall within the scope of employment. *Id.* § 231.

■ Applying the law to the allegations of this case, Davila's acts were similar to what he was assigned to do and of the variety commonly performed by law enforcement agents. Moreover, it was reasonable for the United States to anticipate that Davila, as Commissioner of the VIPD, might abuse this authority. *Compare St. John v. United States,* 240 F.3d 671, 677–78 (8th Cir.2001) (reading "scope of employment" test broadly and holding that sexual assault could be within scope of employment if officer threatened victim with arrest). I find that it was foreseeable to the United States that Davila might abuse his police powers and conduct such a surveillance. I conclude, therefore, that Davila's alleged conduct concerning the surveillance fell within the scope of his federal employment.

■ Having determined that the United States must be substituted for Davila on Counts II and IV, I now decide whether this Court has jurisdiction to entertain them. Under the FTCA, a plaintiff must first file an administrative claim with the responsible agency before coming to court. *See* 28 U.S.C. § 2675(a) (filing an administrative claim is a jurisdictional prerequisite under the FTCA to filing a civil action against the United States); *Rosario v. American Exp.-Isbrandtsen Lines, Inc.,* 531 F.2d 1227, 1231 (3d Cir.1976). Even when the United States is substituted as a defendant under the Westfall Act, the plaintiff is still required to exhaust his administrative remedies. *See Aldridge* 969 F.Supp. at 821 (dismissing plaintiff's claim for failure to exhaust administrative remedies after substitution of the United States under the FTCA); *see also Valenzuela v. Thrifty Rent–A–Car,* Civ. No. 94–7752, 1995 WL 708109, \*\*2–3, 1995 U.S. Dist. LEXIS 17426 at \*5–8 (E.D.Pa.1995) (also dismissing action for failure to exhaust administrative remedies). Accord-

ingly, Counts II and IV must be dismissed, as against the United States, without prejudice.[12]

## III. CONCLUSION

The United States Customs Service detailed Davila to the Government of the Virgin Islands to serve as the Commissioner of the Virgin Islands Police Department. Davila's actions as Commissioner of the VIPD alleged in each count of Anderson's common law tort claims were within the scope of Davila's employment as Commissioner, and his actions as Commissioner were within the "scope" of his federal employment. Therefore, he is immune under the FTCA from liability from Anderson's common law tort claims, and the United States must be substituted as party defendant in his stead. Count III, Anderson's common-law defamation claim, must be dismissed because the United States cannot be sued for defamation under the FTCA. Finally, this Court does not have jurisdiction to consider Counts II and IV, Anderson's claims for intentional infliction of emotional distress, invasion of privacy, and "false light" because Anderson has not exhausted his administrative remedies under the FTCA. Accordingly, I will dismiss Count III with prejudice and Counts II and IV without prejudice.

Because the FTCA does not apply to claims alleging constitutional violations, Count V, Anderson's claim under 42 U.S.C. § 1983 proceeds against Davila personally on the basis of his actions allegedly taken under color of territorial law.

## ORDER

For the reasons given in the accompanying memorandum, it is **ORDERED** that Ramon Davila's and the United States's motion to substitute is **GRANTED** [docket entries # 464 and # 486]. Accordingly, Peter Anderson's ["Anderson"] defamation claim (Count III), as against the United States, is hereby **DISMISSED WITH PREJUDICE** because it is not cognizable under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680. In addition, Anderson's invasion of privacy, false light, and intentional infliction of emotional distress claims (Counts II and IV), as against the United States, are **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction. Finally, Anderson's constitutional claim (Count V) shall proceed against Davila individually.

---

**12.** The FTCA provides that

[w]henever an action or proceeding in which the United States is substituted as the party defendant under this subsection is dismissed for failure first to present a claim pursuant to section 2675(a) of this title, such a claim shall be deemed to be timely presented under section 2401(b) of this title

if—(A) the claim would have been timely had it been filed on the date the underlying civil action was commenced, and (B) the claim is presented to the appropriate Federal agency within [sixty] days after dismissal of the civil action.

28 U.S.C. § 2679(d)(5).